In re the MARRIAGE OF MAYFIELD.

Christine J. MAYFIELD,
Petitioner–Respondent,

v.

Mark MAYFIELD,
Respondent–Appellant.

No. 16139.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 16, 1989.

Kenneth A. Seufert, Farmington, for respondent-appellant.

HOGAN, Judge.

In this action, the trial court heard evidence on two motions. The first motion was the petitioner's motion to remove the parties' minor child from the jurisdiction pursuant to § 452.377, RSMo 1986. The other motion was respondent's alternative motion to cite the petitioner for contempt because she had removed the child from the jurisdiction without obtaining permission from the court, or in the alternative to modify the custody and visitation provisions of the original decree. The trial court found that the petitioner's actions had not been contumacious in the circumstances and entered an order permitting the petitioner to remove the child from the jurisdiction subject to elaborate visitation rights which it granted to the respondent. The respondent, to whom we shall refer as the defendant, has appealed. With certain modifications we deem to be appropriate and in the best interest of the child, we affirm the judgment of the trial court.

At some time prior to November 17, 1987, the parties were married. On October 1, 1987, they became the parents of a male child. On November 17, 1987, their marriage was dissolved. As an incident to their divorce, the parties executed an elaborate "Separation Agreement and Property Settlement" which provided that the petitioner (to whom we shall refer as the plaintiff) would have principal custody of the minor child, subject to defendant's rights of visitation and temporary custody.

The defendant's rights of visitation and temporary custody, subject to variation by agreement of the parties, were as follows:

"A. The husband shall have the temporary custody of said minor child on the 2nd and 4th weekends of each month, from 9:00 a.m. Saturday, until 5:00 p.m. Sunday.

B. The husband shall have the temporary custody of said minor child each Memorial Day weekend and Labor Day weekend from 9:00 a.m. Saturday, until 5:00 p.m. Sunday.

C. The husband shall have the temporary custody of said minor child each Father's Day weekend from 9:00 a.m. Saturday, until 5:00 p.m. Sunday.

D. The husband shall have the temporary custody of said minor child on Thanksgiving Day of all years ending with an even number, from Wednesday at 6:00 p.m. until Sunday at 5:00 p.m.

E. The husband shall have the temporary custody of said minor child on Christmas Day on all years ending with an odd number from 10:00 a.m. Christmas Day until 1:00 p.m. two days immediately preceding the regular day for commencement of regular school sessions in the school district in which the child and mother reside. On all years ending with an even number, the husband shall have temporary custody of the child from 5:00 p.m. on the day following the last regularly scheduled school day in the school district in which the mother and child reside until 1:00 p.m. on Christmas Eve.

F. The husband shall have the temporary custody of the child on Easter on all years ending with an odd number from 5:00 p.m. on the Saturday preceding Easter until 5:00 p.m. on Easter Sunday.

G. The husband shall have the temporary custody of the said minor child for two (2) weeks during the summer. The husband shall have the right to divide this temporary custody in the summer into no less than one-week periods, and the husband shall notify the wife at least thirty (30) days in advance of the dates he elects to exercise this temporary custody during the summer.

The parties may from time to time mutually agree to vary or change the visitation and temporary custody rights above set out when unusual circumstances or conditions make such an occasional change desirable."

Both parties had evidence indicating that the other had been unreasonable with respect to the defendant's rights of visitation. It is inferable that from the time they were divorced until February or March of 1988, the parties attempted reconciliation and the defendant exercised his rights of visitation irregularly but without incident. It is fur-

ther inferable that at some time in 1988, the defendant became interested in another woman and for that reason and others, the parties' custody arrangement worked less smoothly than it had. Each party believed the other had been unreasonable after their attempt at reconciliation failed.

The plaintiff, mother of the child whose custody is the subject of this action, was 22 years of age at the time the parties' motions were heard. She has some education. She graduated from high school and attended a community college in Poplar Bluff for one year. She is able to do "[t]yping [and] computer work" and had been employed by a retail specialty shop before she decided to leave Missouri. The plaintiff earned $94 per week. She was quite candid in stating that she would be unable to support herself and her child if she were not able to live with her parents. It was the plaintiff's testimony that her parents were willing to allow her to live with them indefinitely and she expected her mother to act as an unpaid baby-sitter.

The defendant was 26 years of age at the time of trial. He had remarried "[a]pproximately a month" before the hearing on the parties' motions. He had acquired a residence about a month before the hearing. The defendant's present wife, Martha, had two children, a male child 9 years old and a female child 7 years of age. Although the defendant's present wife was unable to be present because she was preparing to have major surgery—a "full hysterectomy"—the defendant assured the court his present wife would welcome his son into her home as her stepson. At the time of trial, the defendant was employed at a place or by a firm called Cominco as a "lead binder." He worked 40 hours a week, i.e., 5 days per week, 8 hours a day from midnight to 8 a.m. Defendant was off work from Friday morning at 8 a.m. until Sunday at midnight. Defendant was also a part-time police officer at Viburnum, Missouri. The defendant earned approximately $311 per week at Cominco; his income from his employment as a part-time police officer varied. At times he earned only $68 per month; at other times he earned $150 per month. Defendant's present wife also worked from midnight to 8 a.m. at Cominco, but he was confident that his mother or a hired baby-sitter or a sister-in-law would be available to supervise the child if both he and his present wife were unavailable. The defendant also assured the court that he knew how to care for an infant because he had taken care of his 9–year–old daughter by another marriage when that child was a baby.

The present controversy developed when the plaintiff's father was transferred from one place of employment to another. The plaintiff's father is employed by Purcell Tire Company, which has its "main office" in Potosi, Missouri. He had, at trial time, been "promoted to plant manager" in Murray, Utah, and was, according to the plaintiff, "[s]oon to be chief plant manager of both of [his employer's] plants out there." The plaintiff testified she would be willing for the defendant to have custody of the child for the months of June, July and August. The record clearly demonstrates that the plaintiff cannot subsist and care for her child without her parents' assistance. There is no evidence that either parent is not a proper custodian of the child.

Having heard evidence, the trial court indicated it would allow the plaintiff to remove the child from the jurisdiction and would decline to hold the plaintiff in contempt or make the defendant principal custodian of the child. The parties were given time to agree upon "visitation and arrangements" and were further directed to submit a proposed order if they could not agree. The parties could not, of course, agree and the trial court entered an order, the substance of which is as follows: 1) that the court had jurisdiction of the parties and the subject-matter of the action; 2) that since the rendition of the decree of dissolution, there had been a change in circumstances of the parties so substantial and continuing as to make the terms of the original decree concerning the defendant's rights to temporary custody and visitation unreasonable and contrary to the best interest of the child; 3) that it was in the best interest of the child that the plaintiff be allowed to remove the child from the jurisdiction, and

4) that the plaintiff's conduct, to the extent it had hindered the defendant's rights to temporary custody and visitation, was not malicious or continuing in nature and did not constitute contempt or grounds to modify the original custody decree.

The original decree was modified so as to permit the plaintiff to remove the child from the jurisdiction, and the defendant's temporary custody and visitation rights were modified as follows:

"B. That Petitioner is ordered to keep the Respondent informed of the minor child's current residence at all times, as well as the Petitioner's telephone number where the minor child is residing. The Petitioner shall allow Respondent to talk to the parties' minor child by telephone at all reasonable times. In the event the minor child shall be hospitalized for illness or any other reason, Petitioner shall notify Respondent of the same within twenty-four (24) hours; and

C. That Respondent's temporary custody and visitation rights are hereby modified as follows:

(i) Respondent shall have temporary custody and visitation rights of Ryan Carlton Mayfield for a continuous eight (8) week period during the summer months. Respondent shall notify Petitioner at least thirty (30) days in advance of the date which he intends to exercise said summer visitation rights and temporary custody. Respondent shall not exercise said temporary custody and visitation rights in such a manner as to interfere with the minor child's formal education.

(ii) Respondent shall have temporary custody and visitation rights of the parties' minor child each year from December 26 until January 1.

(iii) Respondent shall have temporary custody and visitation rights of the parties' minor child on Easter from 6:00 p.m. Thursday before Easter until 6:00 p.m. Monday following Easter on all years ending with an even number and Thanksgiving from 6:00 p.m. Wednesday before Thanksgiving until 6:00 p.m. Sunday following Thanksgiving on all years ending with an odd number.

(iiii) [sic] Respondent shall be allowed an uninterrupted period of visitation with the parties' minor child of forty-eight (48) hours for each week he is in the immediate area of the residence of Petitioner in Utah, provided Respondent gives Petitioner at least seven (7) days [sic] notice of his intent to exercise said visitation.

(iiiii) [sic] Upon considering all of the relevant factors, including the economic circumstances of the parties, the Respondent shall be responsible for transporting the minor child back and forth from Petitioner's residence in Utah for the aforementioned periods of temporary custody and visitation and shall bear the expenses incurred therein."

The defendant has appealed, setting forth his assignments of error in three diffusely stated points. Slightly paraphrased, the defendant's first point is that: 1) allowing the plaintiff to move out of the jurisdiction was not in the best interest of the child because the plaintiff had no employment in Utah; 2) it was established that the plaintiff's parents had abandoned the plaintiff in Missouri and might therefore abandon her in Utah; 3) such a move would effectively terminate the defendant's rights of visitation, and 4) the plaintiff had failed to establish that reasonable alternative courses of action were not available to her.

A basic premise of this point—of which the defendant should be disabused—is that a divided custody arrangement is not only desirable but a matter of vested right in the circumstances here present. This court recognizes that where neither parent is unfit, the best interests of a minor child usually are served by some arrangement which will permit the child's association with both parents. M__ L__ v. M__ R__, 407 S.W.2d 600, 604 (Mo.App. 1966). There are undoubtedly situations in which joint custody is desirable, but the original decree entered in this case was not intended to provide for "joint legal custody" of the child as that term is defined by

§ 452.375.1(1), RSMo 1986. What the court originally ordered and has ordered in this proceeding for custody amounts to "joint physical custody" which in this case contemplates frequent alternation of physical custody of the child combined with some alternation of both physical and legal custody. Although such custody arrangements are authorized by statute in this and other jurisdictions, they have frequently been disapproved in practice. As the matter is stated in a recent text:

> "Although courts have awarded alternating custody in appropriate cases, divided custody is generally disapproved. This disfavor is based on the premise that shifting a child between homes forecloses a stable environment and the development of permanent associations and creates confusion regarding authority and discipline...."

2 J. McCahey, Child Custody and Visitation, § 13.04[2], p. 13–13, 13–14 (1989). Our courts have repeatedly expressed the same view concerning the frequent and constant shuttling of children, especially very young children, between divorced parents. See *Taylor v. Taylor*, 548 S.W.2d 866, 868–69 (Mo.App.1977); *Stockton v. Stockton*, 459 S.W.2d 532, 535 (Mo.App. 1970); *M— L— v. M— R—*, 407 S.W.2d at 604; *Kimble v. Kimble*, 399 S.W.2d 630, 634[7] (Mo.App.1966).

■ With deference to the parties, it is readily apparent that neither party is, at present, prepared to provide a secure, stable home for the child. We have no doubt of the defendant's good intentions, but he has recently acquired new responsibilities as well as a new home and presumably is still obligated to contribute to the support of his elder child. Admittedly the plaintiff could not subsist and provide for her child without the aid of her parents, but it appears that with their assistance, she has been an entirely suitable custodian of her child. Contrary to the defendant's basic premise, removal of the child from the jurisdiction should not be disallowed solely to maintain the existing visitation patterns. *In re Marriage of Dusing*, 654 S.W.2d 938, 942–43[1][2] (Mo.App.1983); *Auge v. Auge*, 334 N.W.2d 393, 397–399 (Minn.1983);

*D'Onofrio v. D'Onofrio*, 144 N.J.Super. 200, 365 A.2d 27 (1976). We conclude that the best interest of this child would be served by awarding physical and legal custody of the child to the defendant during the months of June, July and August of each calendar year. Plaintiff should have physical and legal custody of the child at all other times. We are aware that as the child matures, it will probably be in the child's best interest to provide for more frequent visitation by the defendant. For the moment, however, we need not be concerned with a future we cannot foresee.

The defendant's ancillary arguments are not supported by the record. He asserts that the plaintiff had no prospect of employment in Utah; plaintiff testified that she had an offer of employment by her father's employer as a "manager-trainee" and had not started working because of this litigation. Counsel's assertion that plaintiff's parents "deserted" her is a plain misstatement of the record. Plaintiff's parents were obliged to move their furniture to Utah without waiting for the court's ruling, but there is no indication that the plaintiff had been "deserted." The defendant's assertion that the plaintiff "failed to establish she had no reasonable alternatives but to leave the State of Missouri" is directly contradicted by the plaintiff's testimony, which the trial court was at liberty to accept.

■ The defendant's second point, again slightly paraphrased, is that the plaintiff intentionally and contumaciously infringed the defendant's rights of visitation by removing the child from the jurisdiction and the trial court erred in holding otherwise. We are cited to *A. G. v. R.M.D.*, 730 S.W.2d 543 (Mo. banc 1987), in which our Supreme Court held that a custodial parent's violation of a custody order may furnish cause for a contempt citation if (1) there was an actual violation of the court's order and either (2) the alleged contemner was able to comply with the court order or (3) the alleged contemner had intentionally and contumaciously placed himself in a position such that he could not comply with the

court's orders. *A.G. v. R.M.D.*, 730 S.W.2d at 546.

■■■ This record does not compel a finding that the plaintiff intentionally and contumaciously put herself in a position such that she could not comply with the trial court's order. The plaintiff was dependent upon her parents for lodging and assistance in caring for the child. When her parents moved to Utah, she was obliged to follow. Plaintiff's testimony indicates she remained in Missouri as long as she reasonably could and returned to Missouri voluntarily to be present at the hearing. Her further testimony was that she had discussed removing the child from the jurisdiction with the defendant and he had offered to agree to the removal if plaintiff would agree to accept $30 per week as child support in lieu of the $50 weekly payment which had been ordered. Plaintiff professed her willingness to abide the ruling of the court if she was not granted permission to remove the child from the jurisdiction. A motion for civil contempt is addressed to the sound discretion of the trial court, and on review its judgment will not be disturbed in the absence of a clear abuse of discretion. *Hoog v. Hoog*, 545 S.W.2d 303, 306[3] (Mo.App.1976); *Fulton v. Fulton*, 528 S.W.2d 146, 157 (Mo.App. 1975). We find no abuse of discretion here.

The defendant's final point is that the trial court should have awarded custody of the minor child to him because the plaintiff wilfully violated the trial court's order by removing the child from the jurisdiction, because he was better suited to be the primary custodian of the child and the environment in which the child would live in Missouri is superior to that in which the child would live in Utah. The point is but a reargument of the defendant's first two points, and what we have already said disposes of the defendant's final point.

■■■ A word concerning our disposition of this appeal is appropriate. The scope of our review, generally stated, is that applied to other court-tried cases. The judgment of the trial court is to be sustained unless there is no substantial evidence to support it or unless it erroneously declares or applies the law, or is against the weight of the evidence. We must exercise the power to set aside the decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong. Rule 73.01(c); *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). Substantively, the controlling principle is that in a custody proceeding the welfare of the child is the primary consideration. The court's duty is to enter a decree which best serves the interest of the child, to which the parents' desires are secondary. *Rumbolo v. Phelps*, 759 S.W.2d 894, 895[1] (Mo. App.1988); *Pulliam v. Sutton*, 728 S.W.2d 252, 253 (Mo.App.1987).

Bearing in mind that our review of the trial court's action is limited as we have just stated, we nevertheless consider that the custody and visitation provisions of the court's order of December 20, 1988, are so elaborate as to be unworkable in the circumstances. As a practical matter, it is necessary for the plaintiff mother to move to Utah. The child is only 2 years of age. Both parents are persons of limited means. The divided custody and visitation schedule which the trial court decreed in the present proceeding is not in the child's best interest. It only provides a focus for continuous controversy and recrimination by the parents. Conceding that a different custody arrangement may become necessary, it is ordered that the first four paragraphs of the decree or order of December 20, 1988, be affirmed; otherwise, the following decree shall be entered:

"WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED by the Court that the Petitioner's Motion Requesting Permission to Remove Minor Child From State is granted pursuant to Section 452.377, RSMo., and that the Decree of Dissolution of Marriage heretofore rendered in this action be modified.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Counts I and II of Respondent's Motion to Cite Christine J. Mayfield for Contempt or in the Alternative, Motion for Change of Custody are hereby denied.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the original Decree of Dissolution of Marriage entered in this cause is hereby modified as follows:

A. That Petitioner is hereby granted permission and leave of the Court to remove the minor child born of the marriage, namely, Ryan Carlton Mayfield, from the State of Missouri to the State of Utah for the purpose of establishing residence for herself and the minor child in the State of Utah; and

B. That Petitioner is ordered to keep the Respondent informed of the minor child's current residence at all times, as well as the Petitioner's telephone number where the minor child is residing.

C. That Respondent's temporary custody rights are hereby modified as follows:

1. Respondent shall have temporary custody of Ryan Carlton Mayfield for and during the months of June, July and August of each calendar year.

2. Petitioner shall have custody of Ryan Carlton Mayfield at all other times.

3. Respondent shall be responsible for transporting the minor child back and forth from the Petitioner's residence in Utah for the aforementioned periods of temporary custody and shall bear the expense incurred in connection therewith; and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the $50.00 per week child support amount ordered against Respondent in the original Decree of Dissolution of Marriage shall remain in effect, except that the said weekly child support shall abate during the calendar months of June, July and August of each calendar year, and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this court retain jurisdiction to make such other and further order concerning the custody of Ryan Carlton Mayfield as may be necessary to preserve and protect the best interest of the said child;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all of the prior Orders with respect to the Decree of Dissolution of Marriage herein shall remain in full force and effect except with regard to Respondent's temporary custody and visitation rights which are modified herein."

The cause is remanded for entry of a decree as indicated by this opinion. A copy of the order of the decree to be entered shall be attached to and become a part of the mandate herein issued. It is so ordered.

FLANIGAN, P.J., and MAUS, J., concur.