Rick L. **FUGITT,** Petitioner–Respondent,

v.

Nancy A. **FUGITT,** Respondent–Appellant.

No. 18190.

Missouri Court of Appeals,
Southern District,
Division Two.

April 2, 1993.

Nancy Steffen Rahmeyer, Pratt & Fossard, Springfield, for respondent-appellant.

No appearance for petitioner-respondent.

FLANIGAN, Judge.

Nancy (Fugitt) Benton appeals from an order of the trial court, entered May 11, 1992, denying her motion to cite her former husband, Rick L. Fugitt, for contempt. The marriage of the parties, who will be referred to by their first names, was dissolved on May 11, 1989. By the terms of the dissolution decree, and a property settlement agreement incorporated in it, Rick was ordered to make certain payments to Nancy. The payments included monthly maintenance of $1,675.

On October 24, 1991, Nancy filed the instant motion, which stated that Rick's total indebtedness to her, as of September 1, 1991, was $87,173.87. The motion further stated that Rick's failure to pay the arrearages was "willful, deliberate, intentional, and in contempt of this court's orders." Rick was served with an order issued by the trial court, directing him to show cause why he should not be held in contempt as sought by the motion.

On May 7, 1992, a hearing was held, and each party presented evidence. Later the court entered its order denying Nancy's motion. In the order, the court found that the arrearages set forth in the motion were due. The order further stated: "The court finds Rick's earnings were diminished during the calendar year for 1990 from the ownership and employment with Corporate Coach Works to such extent that he was unable to meet his personal and necessary business expenses and pay such sums as were required by the separation agreement described in this court's decree, and that in the calendar year for 1991 Rick was largely without income except for borrowed funds. The court further finds that Rick's income for 1992 is $3,000 per month and is insufficient to meet his legal obligations for support of his children and necessary living expenses.... Rick has just cause and excuse for his failure to pay the sums required for maintenance of [Nancy] as per the separation agreement described in the decree of this court and meet his other legal obligations, including his reasonable and necessary living expenses."

Nancy's sole point on appeal is that the trial court erred in failing to find Rick in contempt of court "in that there was no substantial evidence to support the court's finding that Rick was unable to meet his personal and necessary business expenses where the evidence showed Rick's family income was $6,000 per month at the the time of the hearing, Rick had sold personal assets without applying any of the proceeds to the court ordered obligations and Rick failed to provide any documentation for his income and receipts."

At the hearing, Nancy testified that the last payment which she received from Rick was made on March 4, 1991, and that his arrearages, to the date of filing of the motion, amounted to $87,173.87. She asked the court to find Rick in contempt and to put him in jail until he purged his contempt. On cross-examination, she testified that she understood Rick's annual income, at the time of the dissolution, exceeded $200,000. She said that Rick remained current on his payments until March 1990. She said that she remarried in July 1991, but pointed out that the decree of May 11, 1989, incorporated a settlement agreement which provided that her remarriage would not affect Rick's duty to pay.

Rick, testifying in his own behalf, said that he is 39 and lives in Laredo, Texas. He has remarried and has a four-year-old son and a two-year-old daughter.

Rick further testified: At the time of the dissolution I was an owner of Corporate Coach Works, a corporation, which paid me a salary in excess of $200,000 a year. Following the dissolution, the corporation continued to be prosperous for a short period of time. In early 1990, the corporation had financial problems and my salary was cut to $8,000 a month. Sometimes there were salary deferrals and the payment of the salary was very erratic. During that period of time, I exclusively used personal credit cards to keep things afloat and cover my business travel expenses.

Rick further testified: In May 1991, Corporate Coach Works went into bankruptcy and my salary was terminated by the bankruptcy court until further approval. It was later approved at $5,500 a month combined for my wife and me, but the business closed two days later. My wife was working full time in the business. In October 1991, the business closed and the assets were liquidated except for a building for which they can't find a buyer. The sale of the corporate assets left a deficiency of $750,000. As a principal in the business, I was required to sign the notes individually. From June 1991 until the end of the year, I had no income. I lived on money borrowed from my wife's family and I used my individual credit. I borrowed $70,000 from my mother to try to keep the corporation going, and I borrowed almost $50,000 from my in-laws to keep everything floating. It's most likely that personal bankruptcy is going to be the ultimate outcome. When the business closed, I remained unemployed for 90 days. I am a CPA, although my license has lapsed, and I made numerous attempts to find a job in the automobile industry or in accounting. In December 1991, I was hired by Laredo Coach Works, Laredo, Texas, and my salary is $3,000 a month. My wife has a salary of $3,000 a month. I work in Mexico every day and live in Laredo, which is a border town. I rent a house in Laredo for $1,200 a month. There is not an over-abundance of housing, and things are very expensive. Exhibit 1 is my estimate of my monthly expenses from December 1990 to the present. I pay $430 monthly tuition for my children at a private school. Some of the assets I received under the dissolution decree had been repossessed by mortgagees. The other assets are all gone.

On cross-examination, Rick testified: I have $250 a month unreimbursed business telephone expenses, $60 for cable tv, $250 for clothing for four people a month, $400 a month for child care so my wife and I can produce income. Current taxes are $750 a month, and I am not making those payments. I have a car payment of $470 per month on a 1991 Lincoln, my only car. I bought the Lincoln about the time the corporation was going out of business. I pay the IRS $500 a month in back taxes. I have not been able to pay that in the last couple of months. I have not paid any money on my 1991 taxes. I am supporting my family and trying to get back on my feet so I can pay Nancy. Right after the dissolution, I went to Hawaii on a two-week vacation. During my marriage to Nancy, Hawaii was a yearly common deal. I did not file a tax return for 1991. My returns for the two prior years are in Texas. I have lost all my credit cards. I have not transferred any assets into my wife's name or into our joint names. We own a house in Springfield which is going back to the bank under a first mortgage. There is a

second mortgage on it of $450,000, payable to the SBA.

Section 452.345[1] relates to payment of maintenance and provides for certain procedures which may be invoked for its nonpayment. See *Teefey v. Teefey*, 533 S.W.2d 563, 564–565 (Mo. banc 1976); *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567, 568–569 (Mo. banc 1976).

■ Even in the absence of statute, a court has the inherent authority to enforce the payment of maintenance by attachment for contempt. *Stanhope, supra,* at 573. "[Imprisonment for contempt] is a rather drastic remedy which should be carefully and cautiously exercised. Before ordering imprisonment trial courts should be convinced that the person is financially able to make the required payment or that he has intentionally and contumaciously placed himself in a position so that he could not comply with the court's orders. Also, we think the trial courts, in the exercise of a sound discretion, may require that the party seeking the contempt order make reasonable efforts to collect by conventional remedies available before entering the contempt order." *Id.* at 575.

■ Contempt proceedings for nonpayment of maintenance are classified as civil contempt, *State ex rel. McCurley v. Hanna*, 535 S.W.2d 107, 108 (Mo. banc 1976); *In re Marriage of Gehlert*, 629 S.W.2d 503, 504[1] (Mo.App.1981), and the same is true of proceedings under § 452.345, *Teefey, supra,* 533 S.W.2d at 566[4]. In *Teefey* the court said, 533 S.W.2d at 565:

Civil contempt proceedings are generally held to be remedial and civil in their nature; that is, they are proceedings for the enforcement of some duty, and essentially a remedy for coercing a person to do the thing required. As otherwise expressed a proceeding for civil contempt is one instituted to preserve and enforce the rights of a private party to an action and to compel obedience to a judgment or decree intended to benefit such a party litigant. So a proceeding is one for civil contempt, regardless of its form, if the act charged is wholly the disobedience, by one party to a suit, of a special order made in behalf of the other party, and the disobeyed order may still be obeyed, and the purpose of the punishment is to aid in an enforcement of obedience.

"A motion for civil contempt is addressed to the sound discretion of the trial court, and on review its judgment will not be disturbed in the absence of a clear abuse of discretion. *Hoog v. Hoog*, 545 S.W.2d 303, 306[3] (Mo.App.1976); *Fulton v. Fulton*, 528 S.W.2d 146, 157 (Mo.App.1975)." *In re Marriage of Mayfield*, 780 S.W.2d 139, 144 (Mo.App.1989).

On imprisonment for civil contempt, the contemnor in a sense has the key to his cell in his pocket, *Brown v. Brown*, 646 S.W.2d 888, 889 (Mo.App.1983); he can secure his release by purging himself of contempt in whatever manner is specified in the order. The contemnor must have the ability to purge himself of his contempt to justify imprisonment for civil contempt. *Huber v. Huber*, 649 S.W.2d 955, 958 (Mo.App.1983); *Mechanic v. Gruensfelder*, 461 S.W.2d 298, 304 (Mo.App.1970).

*State ex rel. Foster v. McKenzie*, 683 S.W.2d 270 (Mo.App.1984).

"The occasions in which a civil action contemnor may be imprisoned are far more limited than those in which the criminal contemnor may be imprisoned." *Chemical Fireproofing Corp. v. Bronska*, 553 S.W.2d 710, 714[3] (Mo.App.1977).

In *Blair v. Blair*, 600 S.W.2d 143, 145 (Mo.App.1980), the court said:

In *In re Marriage of Vanet*, 544 S.W.2d 236, 245–6[12, 13] (Mo.App.1976) this court held that in an action for contempt under § 452.345, when a violation of a court order for the payment of maintenance and child support is established, the burden of proof is upon the party

---

1. All references to statutes are to RSMo 1986, V.A.M.S.

required to make payment to show a financial inability to do so and that such inability was not intentionally and contumaciously brought about by his own conduct. This court sees no reason why a different rule should be applied in an action for contempt under the inherent power of the court rather than under the statutory power. Thus, when Gloria established the obligation of Ben to pay $200 monthly maintenance and proved that such payments had not been made, she had made a prima facie case of contempt. The burden was then upon Ben to prove his inability to make payment and that such inability was not intentionally and contumaciously brought about by his own conduct.

■ Nancy has the right to appeal from the order of the court refusing to hold Rick in contempt. *Blair,* 600 S.W.2d at 145[4]; *In re Blankenship,* 553 S.W.2d 307, 308[1, 2] (Mo.App.1977).

The decree requiring the payments was entered in May 1989. Nancy testified that Rick remained current on his payments until March 1990, and that the last payment she received was made on March 4, 1991. In May 1991, Corporate Coach Works went into bankruptcy. Rick was a principal in that company. From it, at the time of dissolution, he received an annual salary exceeding $200,000, which was later reduced and paid erratically. That salary ended in May 1991. During the remainder of that year, so Rick testified and so the trial court found, Rick was largely without income except for borrowed funds.

■ The instant motion was filed in October 1991, which was two months prior to Rick's obtaining his present employment. Nancy's motion was not a proceeding under § 452.345, but it was properly directed to the court's inherent authority to enforce the payment of maintenance by attachment for contempt. Nancy made a prima facie case of contempt when she introduced the contents of the order of May 11, 1989, and Rick's history of payments and arrearages. It then became Rick's burden to prove that he was unable to make the payments and that such inability

was not intentionally and contumaciously brought about by his own conduct.

Rick testified that he made efforts to obtain employment and finally succeeded in doing so in December 1991. His present salary of $3,000 a month did not exist when Nancy's motion was filed. It is arguable that some of the expenses on Exhibit 1, referred to by Rick in his testimony, are somewhat inflated or perhaps unnecessary. The trial court, however, made no such finding. Exhibit 1 has not been filed in this court for review.

Nancy makes no claim that Rick's financial condition is such that he is able to pay all of the arrearages. The record is silent as to whether Nancy made any efforts to collect a portion of Rick's present salary by proceedings in Texas. This court does not condone Rick's payment record, and there is nothing to indicate that the trial court did so. Nevertheless, an order of imprisonment, if entered by this court and enforced, would have the practical effect of eliminating Rick's Texas salary as a possible target for collection efforts by Nancy in that state.

If this court had been the initial trier of fact, it might have ruled otherwise. Imprisonment, however, as stated in *Stanhope,* is a drastic remedy which should be carefully and cautiously exercised. This court holds that the trial court did not clearly abuse its discretion in denying Nancy's motion and in not entering an order of imprisonment.

The judgment is affirmed.

GARRISON, J., concurs.

PREWITT, J., dissents.

PREWITT, Judge, dissenting.

I respectfully dissent. I do not believe that *petitioner-respondent's* testimony regarding his financial condition is believable. I think the record establishes that he is at least able to pay something toward his obligation to appellant. Under these cir-

cumstances I believe the trial court should have held him in contempt.