**Jack and Shirley ROBERTS,
Appellants,**

**v.**

**Junior and JAN FLOWERS,
Respondents.**

No. 22606.

Missouri Court of Appeals,
Southern District,
Division One.

July 23, 1999.

Clinton B. Roberts, Roberts, Roberts & Burcham, L.L.C., Farmington, for appellant.

John L. Oliver, Jr., Oliver, Oliver & Waltz, P.C., Cape Girardeau, for respondent.

CROW, Judge.

This appeal brings this case to this court a second time.

The case was first here when Junior and Jan Flowers ("Flowerses") appealed from a judgment filed August 4, 1995 ("1995 judgment") which granted Jack and Shirley Roberts ("Robertses") an easement across Flowerses' land, together with an entrance to the easement from a county road. This court affirmed the 1995 judgment in an unpublished order accompanied by a memorandum per Rule 84.16(b)(1) and (5), Missouri Rules of Civil Procedure (1996).

The present appeal arises from a dispute about the configuration and width of the entrance to Robertses' easement. The issues confronting this court can be coherently discussed, if at all, only after a chronological account of the litigation.

August 15, 1995. Robertses file motion to cite Flowerses for contempt for violating 1995 judgment.[1]

August 28, 1995. Flowerses file motion for new trial.[2]

October 3, 1995. Trial court holds hearing on whether Flowerses shall be held in contempt. Robertses present evidence that they installed a sixteen-foot-wide gate at the entrance to their easement in conformity with 1995 judgment, but that Junior Flowers ("Junior")[3] promptly removed the gate and installed a smaller one that did not conform to the judgment.

October 12, 1995. Trial court files order levying $500 fine on Junior for "civil contempt" and commanding him to pay Robertses' attorney fees of $1,050. Order provides Junior can "purge himself of further contempt" by installing a fence and gate at the entrance to Robertses' easement in compliance with 1995 judgment, and if he fails to comply within 48 hours he is fined $250 for each day thereafter. Order sets hearing for November 21, 1995, to determine whether Junior has purged himself.

November 3, 1995. Junior files motion to vacate order of October 12, 1995.

December 1, 1995. Flowerses file notice of appeal from 1995 judgment.[4]

January 22, 1996. Trial court files "Order & Judgment" granting Junior's motion of November 3, 1995. The "Order & Judgment" is henceforth referred to in this opinion as the "1996 judgment." The 1996 judgment states, *inter alia:*

"[T]here were irregularities in the Order to Show Cause; that the Order is on

1. This motion is not in the record furnished this court.

2. This motion is not in the record furnished this court; however, it appears the motion was timely under Rule 73.01(a)(4), Missouri Rules of Civil Procedure (1995), as it was filed within thirty days after entry of the 1995 judgment.

3. For brevity and clarity, this opinion henceforth refers to Junior Flowers by his forename. No disrespect is intended.

4. The record furnished this court does not reveal whether the trial court denied Flowerses' motion for new trial or whether the 1995 judgment became final under Rule 81.05(a), Missouri Rules of Civil Procedure (1995), upon expiration of ninety days after Flowerses filed the motion. This court assumes the notice of appeal was filed within the time allowed by Rule 81.04(a), Missouri Rules of Civil Procedure (1995).

its face irregular; that the evidence is insufficient to support the Order; and that the Defendant was not served as required by Rule 74.33 [5]."

The 1996 judgment proclaims: "[T]his Court's Order of October 12, 1995, adjudicating Junior Flowers in contempt, is hereby set aside and held for naught."

October 21, 1996. This court issues order and memorandum referred to in the second paragraph of this opinion, affirming 1995 judgment.

December 2, 1996. This court issues mandate pursuant to order and memorandum of October 21, 1996.

February 24, 1997. Robertses file motion to set aside 1996 judgment. Motion avers trial court lacked jurisdiction to enter 1996 judgment because case was on appeal to this court when trial court signed 1996 judgment. Robertses also file motion designated: "Motion to Cite Defendants for Contempt and Order to Show Cause." Motion avers, *inter alia*, that on August 9, 1995, Flowerses tore down the fence and gate installed by Robertses and installed a gate with a narrower "entrance width," barricading it so Robertses could not use their easement. Motion further avers Flowerses "have taken no steps to comply with the [1995 judgment] since their appeal has been denied." Motion prays trial court to find Flowerses in civil contempt and order them to comply with 1995 judgment and "restore the fence as constructed by [Robertses] in compliance with the

[1995 judgment]." Motion also seeks attorney fees and "all damages incurred by [Robertses] as a result of [Flowerses'] contentious conduct."

June 6, 1997. Clerk of trial court receives order from Supreme Court of Missouri assigning Honorable John W. Grimm to this case.[6]

February 27, 1998. Trial court holds evidentiary hearing on motions filed by Robertses February 24, 1997. Evidence at that hearing pertinent to the present appeal is synopsized later in this opinion.

July 8, 1998. Trial court files "Memorandum, Order and Judgment" ("1998 judgment") denying Robertses' motion of February 24, 1997, to set aside 1996 judgment and denying Robertses' motion of February 24, 1997, to cite Flowerses for contempt.

August 5, 1998. Robertses file motion for new trial.

■ October 6, 1998. Trial court enters order denying Robertses' motion for new trial.[7]

October 16, 1998. Robertses file notice of appeal from 1998 judgment.

Robertses' brief presents two assignments of error. This opinion addresses them in reverse order.

The second claim of error avers the trial court wrongly denied Robertses' motion of February 24, 1997, which prayed the trial

---

5. Rule 74.33, Missouri Rules of Civil Procedure, was repealed by order of the Supreme Court of Missouri dated May 22, 1987, effective January 1, 1988 (eight years before trial court entered 1996 judgment). Vol. 727–728 S.W.2d Mo. Cases, pp. XXV–XXXV; vol. 733–734 S.W.2d Mo. Cases, p. XXVI.

6. The judge who presided over this case in the trial court at all times heretofore mentioned in this opinion recused May 6, 1997.

7. The order shows Judge Grimm signed it October 5, 1998, but it was not filed of record in the trial court until October 6, 1998. This court infers Judge Grimm signed the order elsewhere than Reynolds County and mailed

it to the circuit clerk's office at Centerville for filing. This court considers the order entered as of October 6, 1998, the date it was stamped filed by the clerk. *See:* Rule 74.01(a), Missouri Rules of Civil Procedure (1998); *Cf. Hill v. Director of Revenue*, 985 S.W.2d 824, 826–27[1] n. 1 (Mo.App. W.D.1998). This court is mindful of *In re Marriage of Huey*, 716 S.W.2d 479, 480 (Mo.App. S.D.1986), where this court held a judgment "entered orally but on the record" was entered the date the trial court pronounced it, not on a later date when a written judgment was filed. *Huey* is not applicable here, as there was nothing "on the record" October 5, 1998, reflecting Judge Grimm's ruling.

court to set aside the 1996 judgment—the judgment that vacated the order of October 12, 1995, holding Junior in civil contempt.

Robertses maintain the trial court had no jurisdiction to enter the 1996 judgment because, on the date it was entered (January 22, 1996), the case was on appeal to this court.[8] Consequently, insist Robertses, the 1996 judgment is void and the trial court erred in refusing to set it aside.

Rule 74.06(b)(4), Missouri Rules of Civil Procedure (1999), which has remained unchanged since 1988, empowers a trial court to relieve a party from a void judgment. Rule 74.06(c) requires a party seeking relief under Rule 74.06(b)(4) to file a motion for it within a reasonable time.

Although Robertses did not designate their motion to set aside the 1996 judgment as a motion under Rule 74.06(b)(4), this court treats it as such. Inasmuch as Flowerses do not assert Robertses failed to file the motion within a reasonable time,[9] this court shall assume, without deciding, that Robertses met that requirement.

As authority for their hypothesis that the 1996 judgment is void, Robertses cite *Skinner v. Osage County,* 822 S.W.2d 437 (Mo.App. E.D.1991); *Davidson v. Ellison,* 681 S.W.2d 479 (Mo.App. W.D.1984); *General Growth Properties v. Oval Office, Inc.,* 670 S.W.2d 165 (Mo.App. W.D.1984).

*Skinner* stands for the proposition that once a trial court enters judgment and a party files a timely notice of appeal, the trial court has no jurisdiction to correct a defective legal description in the judgment two and a half months later. 822 S.W.2d at 443[8]. According to *Skinner,* at that stage a trial court is limited to nunc pro tunc corrections of ministerial errors. *Id.*

*Davidson* stands for the proposition that the filing of an effective notice of appeal cuts off the trial court's jurisdiction to exercise any judicial function in the case and vests jurisdiction in the appellate court. 681 S.W.2d at 481[5]. Thus, after a notice of appeal is filed, a party cannot be added in the trial court, nor can a petition be amended or a party dismissed. *Id.* at 482[6].

*General Growth Properties* stands for the proposition that once a notice of appeal is filed, the trial court loses jurisdiction to set aside the judgment for irregularity. 670 S.W.2d at 166–67.

In the instant case, the 1996 judgment did not purport to do any of the acts foreclosed by *Skinner, Davidson* or *General Growth Properties.* Indeed, the 1996 judgment did not even mention the 1995 judgment. The 1996 judgment pertained strictly to the contempt proceeding initiated by Robertses on August 15, 1995, in an effort to enforce the 1995 judgment.

As recounted earlier, the trial court held Junior in civil contempt October 12, 1995, and endeavored, by that order, to compel Junior to provide Robertses the relief granted them in the 1995 judgment.[10] The sole effect of the 1996 judgment was to vacate the October 12, 1995, order. It is thus manifest that both the October 12, 1995, order and the 1996 judgment left the 1995 judgment undisturbed.

---

8. As previously chronicled in this opinion, Flowerses appealed to this court from the 1995 judgment. Their notice of appeal was filed December 1, 1995. The appeal remained in this court until December 2, 1996, when this court issued its mandate affirming the 1995 judgment.

9. Robertses filed the motion thirteen months after the trial court entered the 1996 judgment.

10. *Teefey v. Teefey,* 533 S.W.2d 563, 565–66[2] (Mo. banc 1976), teaches that civil contempt is a procedure designed to provide a prevailing party a coercive means to compel his adversary to comply with the relief granted the prevailing party by the trial court. The civil contemnor has at all times the power to terminate his punishment by compliance with the order of the court—i.e., purging. *Id.* at 566.

■ In the portion of the 1998 judgment which denied Robertses' motion to set aside the 1996 judgment, the trial court, citing *Lake Thunderbird Property Owners Association, Inc. v. Lake Thunderbird, Inc.*, 680 S.W.2d 761 (Mo.App. E.D.1984),[11] correctly concluded that although it lost jurisdiction to alter the 1995 judgment after Flowerses filed their notice of appeal, it did not lose jurisdiction to rule in the civil contempt proceeding while Flowerses' appeal was pending. That is illustrated by *In re Marriage of Smith,* 721 S.W.2d 782 (Mo.App. S.D.1986).

In *Smith,* a party appealed from a decree of dissolution of marriage but posted no supersedeas bond.[12] *Id.* at 783. This court held the trial court had jurisdiction to enforce the property division in the decree by civil contempt while the appeal from the decree was pending. *Id.* at 783–84[1].

Consistent with *Smith,* this court holds the trial court in the instant case had jurisdiction to enforce the 1995 judgment while Flowerses' appeal from it was pending in this court. When Flowerses filed their notice of appeal (December 1, 1995), the civil contempt order of October 12, 1995, against Junior was in force, but Junior's motion of November 3, 1995, asking the trial court to vacate the civil contempt order, was awaiting the trial court's attention.

Because the trial court had jurisdiction to enforce the 1995 judgment while Flowerses' appeal was pending, the trial court had jurisdiction to either grant or deny Junior's motion to vacate the civil contempt order. This court therefore rejects Robertses' theory that the trial court lacked jurisdiction to enter the 1996 judgment, which vacated the civil contempt order. It follows that the trial court did not err in denying Robertses' motion of February 24, 1997, which prayed the trial court to set aside the 1996 judgment. Robertses' second point is denied.[13]

■ Robertses' first point reads:

"The trial court erred in failing to find Respondent [14] in contempt because the trial court failed to enforce the entire consent judgment as previously mandated by this court."

The above claim of error attacks the portion of the 1998 judgment denying Robertses' motion of February 24, 1997, which prayed the trial court to hold Flowerses in civil contempt.

**11.** In *Lake Thunderbird,* the appellate court explained that the rule regarding a trial court's loss of jurisdiction over its judgments after expiration of the thirty day period in Rule 75.01 "merely bars the [trial] court's right to alter, modify or change them but does not preclude their enforcement as originally rendered." *Id.* at 763[4].

**12.** In that respect the instant case is like *Smith,* as nothing in the record before us indicates Flowerses posted a supersedeas bond to stay enforcement of the 1995 judgment as permitted by Rules 81.09 and 81.10, Missouri Rules of Civil Procedure (1995).

**13.** An attentive reader will recall that the 1996 judgment set forth the grounds relied on by the trial court for vacating the October 12, 1995, civil contempt order. In this appeal, Robertses do not claim those grounds were insufficient to warrant vacatur. Robertses' only attack on the 1996 judgment is that the trial court lacked jurisdiction to enter it. Had Robertses challenged the grounds on which the trial court vacated the civil contempt order, such a challenge might have been barred, as Robertses filed no timely notice of appeal from the 1996 judgment. Perhaps Robertses recognized that hurdle and chose to assail the 1996 judgment on the sole basis that it was void.

**14.** There are, of course, two respondents in this appeal, Junior and Jan Flowers. At the first contempt hearing (October 3, 1995), Robertses' lawyer announced Robertses were "withdrawing any motion to cite as to Jan Flowers." At the second contempt hearing (February 27, 1998), Robertses' lawyer announced Robertses were seeking to "cite Mr. Flowers for contempt." This court therefore deduces that the term "Respondent" in Robertses' first point refers to Junior alone, and that Robertses assign no error in the trial court's failure to hold Jan Flowers in contempt.

Flowerses correctly assert that Robertses' first point does not comply with Rule 84.04(d), Missouri Rules of Civil Procedure (1999), which took effect January 1, 1999.[15] Rule 84.04(d)(1)(B) and (C) require, respectively, that a point relied on state concisely the legal reasons for the claim of reversible error and explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

Robertses' first point presents the unadorned proclamation that the trial court's failure to find Junior in contempt was erroneous in that the court "failed to enforce the entire consent judgment." The point sets forth no legal reason for the claim of reversible error and provides no explanation why, in the context of the case, any legal reason supports the claim of reversible error. This court is left to wonder what Robertses believe the trial court—through its civil contempt power—should have compelled Junior to do.

■ This court has encountered similarly defective points relied on since the advent of new Rule 84.04(d). Two such cases are *In re Marriage of Ford,* 990 S.W.2d 698, 701–02[2] (Mo.App. S.D.1999), and *In re Marriage of Wright,* 990 S.W.2d 703, 708[5] (Mo.App. S.D.1999). In those cases, this court followed the example of the Supreme Court of Missouri in *J.A.D. v. F.J. D.,* 978 S.W.2d 336 (Mo. banc 1998), where a point relied on was deficient under the former version of Rule 84.04(d). In *J.A. D.,* the Supreme Court reviewed the record for plain error under Rule 84.13(c). *Id.* at 339. That rule empowers an appellate court, in its discretion, to grant relief from unpreserved plain errors affecting substantial rights if the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

Consistent with *J.A. D., Ford,* 990 S.W.2d at 702–03, and *Wright,* 990 S.W.2d at 708–09, this court shall determine whether Robertses are entitled to plain error relief.

■ The 1995 judgment provides, *inter alia,* that Robertses have a "general easement" across Flowerses' land. The judgment continues:

> "[Robertses'] general easement does not set forth its width. The Court finds [Robertses] are entitled to an easement of 16 feet at the easement's entrance with the entrance set back from the County Road so that [Robertses] have a convenient and reasonable way of ingress and egress into their easement."

The judgment declares that Robertses are to construct, at their cost, a gate and fencing with the "approximate dimensions" shown on a diagram, a copy of which is appended at the end of this opinion.[16]

As henceforth explained, the dimensions on the diagram are inharmonious.

Two posts are shown on the edge of the road, one at each end of the diagram. As this court comprehends the diagram, the distance between those posts is 35 feet.

Two gateposts are shown, each of which is 10 feet from the road. The distance between the gateposts is shown as 16 feet. On each side of the gate, a fence extends from the gatepost to the corresponding post at the edge of the road. The length of each fence is shown as 15 feet.

An imaginary line from each gatepost to the edge of the road forms a right angle. Thus, on each side of the diagram is a right triangle. One side of each triangle is 10 feet long; the hypotenuse of each triangle, according to the diagram, measures 15 feet.

---

**15.** Robertses' brief was filed April 13, 1999, three and a half months after the current version of Rule 84.04 took effect.

**16.** This court gleans from the record and briefs that the reason for designing the entrance as shown on the diagram was that

Robertses use the easement to drive "logging trucks" across Flowerses' land and the trucks need space between the edge of the road and the gate to turn from the road into the easement (and vice versa).

If one subtracts the distance between the gateposts (16 feet) from the distance between the posts on the edge of the road (35 feet), one is left with 19 feet. Consequently, according to the diagram, the side of each triangle that lies on the edge of the road should measure 9½ feet.

However, the pythagorean theorem [17] establishes that where one side of a right triangle measures 10 feet and the hypotenuse measures 15 feet, the other side must be 11.18 feet. Thus, it is impossible to construct an entrance matching the dimensions on the diagram.

At the hearing February 27, 1998, Junior testified that after this court affirmed the 1995 judgment, he and some employees moved the fence away from the road on each side of the entrance to Robertses' easement so that the "western-most" gatepost is 14 feet from the edge of the road and the "eastern-most" gatepost is 10 feet from the edge of the road.[18] Furthermore, avowed Junior, he made the opening between the gateposts 24 feet wide instead of 16 feet as shown on the diagram. As this court comprehends the record, instead of one gate across the opening, Junior installed two 12–foot gates, attaching one to each gatepost.

In denying Robertses' motion of February 24, 1997, to hold Flowerses in civil contempt, the trial court found:

"There was no evidence adduced in this matter that [Robertses] had other than a sixteen foot wide easement entrance set back from the County Road ten feet. To the contrary, the evidence clearly demonstrates that the [Robertses] have had an easement at least as wide as that required by the judgment."

Robertses concede there is credible evidence that "the gate is ten feet or more from the road."

This court gathers from Robertses' brief that they are displeased with the entrance constructed by Flowerses because (a) the entrance does not conform to the diagram in the 1995 judgment, (b) there are two gates across the entrance instead of one, (c) the fence attached to each gatepost is barbed wire instead of wood—the material used by Robertses when they constructed the entrance immediately after the trial court entered the 1995 judgment, and (d) if county road officials change the location of the road by moving it toward the fence,[19] Robertses will not have "ten feet of entrance distance" from the edge of the road to the gate.

■ This court's review of the 1998 judgment is governed by Rule 73.01(c), Missouri Rules of Civil Procedure (1999). In *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), the Supreme Court of Missouri construed the predecessor of Rule 73.01(c) to mean that the judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32[1]. Furthermore, a motion for civil contempt is addressed to the sound discretion of the trial court, and on review its judgment will not be disturbed in the absence of a clear

17. The pythagorean theorem is a theorem in geometry: the square of the length of the hypotenuse of a right triangle equals the sum of the squares of the lengths of the other two sides. Webster's Third New International Dictionary (Merriam–Webster Inc.1986) 1855.

18. Junior explained the reason he disliked the configuration of the entrance on the diagram is that he has cattle on his land and the angle formed by the fence from the gateposts to the posts along the road in the diagram would make it difficult to "get cattle out of the field." In Junior's words: "With that angle, when you get the cattle here, they shoot out across the field, they don't see the gate opening because ... they're already turned back out the other direction toward the field." As this court comprehends Junior's testimony, he moved approximately 150 feet of fence away from the road on each side of the entrance to Robertses' easement so no angle is formed by the fence attached to the gateposts.

19. Robertses maintain there was evidence that the road was moved away from the fence after Junior dismantled the entrance constructed by Robertses in 1995.

abuse of discretion. *Fugitt v. Fugitt*, 850 S.W.2d 396, 399 (Mo.App. S.D.1993); *In re Marriage of Mayfield*, 780 S.W.2d 139, 144[5] (Mo.App. S.D.1989).

In determining whether to hold Junior in civil contempt, the trial court was entitled to believe Junior's testimony about the present configuration of the entrance,[20] as credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of any witness's testimony. *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988).

Heeding the guidelines in the two preceding paragraphs, and emphasizing that this court is reviewing Robertses' first point for plain error only, this court— accepting as true the evidence favorable to the 1998 judgment, *T.B.G. v. C.A. G.*, 772 S.W.2d 653, 654[2] (Mo. banc 1989)—holds the trial court's refusal to find Junior in civil contempt did not inflict manifest injustice or a miscarriage of justice on Robertses.

This court expresses no opinion on what recourse Robertses may have if, as they fear, county officials change the location of the road sometime in the future.[21] Resolution of that potential problem must await its occurrence.

Judgment affirmed.

PREWITT, P.J., and PARRISH, J., concur.

APPENDIX

---

**20.** Junior's testimony was supported by photographs of the entrance.

**21.** Robertses' brief avers Flowerses, "by their influence over [a commissioner of Reynolds County] can have the county road again moved up close to the fence providing great difficulty for [Robertses] and their logging trucks to enter into the easement."