Earnestine KENNEDY, et al., Appellants,

v.

Malvin MILLIGAN, et al., Respondents.

No. WD 50530.

Missouri Court of Appeals,
Western District.

Feb. 20, 1996.

Ronald C. Spradley, J. Dale Youngs, Kansas City, for appellants.

Doc Netterville, IV, John Kurtz, Deborah Neal, Kansas City, for respondents.

Before SMART, P.J., and LOWENSTEIN and BERREY, JJ.

BERREY, Judge.

This appeal commenced as an action for conversion and injunctive relief regarding the contents of several safe deposit boxes. Appellants contend their deceased aunt, Helen Milligan, gave the contents of the boxes to them as a gift. Respondent Malvin Milligan, husband of Helen, contends the contents of the safe deposit boxes rightfully belong to him. The case was tried to a jury in the Probate Division of the Circuit Court, and the jury returned a verdict in favor of respondents. On September 16, 1994, the judgment was entered, and appellants' posttrial motions were subsequently denied. Thereafter, appellants were granted leave to file their notice of appeal out of time.

Appellants raise three points on appeal. They first argue the trial court plainly erred in admitting evidence and allowing closing argument regarding the language of the rental contracts governing the safe deposit boxes at issue. They assert such evidence and argument was irrelevant. Appellants next claim the trial court plainly erred in sustaining the respondent's objections to the admission of evidence regarding Missouri's prohibition of a presumption of ownership of the contents of safe deposit boxes. Appellants contend such evidence was "curatively admissible." Finally, appellants argue the trial court erred in overruling their objection to the admission of evidence regarding real estate jointly held by Helen and Malvin Milligan because this evidence was irrelevant.

Helen and Malvin Milligan were married in 1957. No children were born of the marriage, but Helen maintained a close relationship with her nieces, appellants Earnestine Kennedy and Bettie Kennedy. Earnestine Kennedy lived in Kansas City, Missouri and Bettie Kennedy lived in Great Falls, Virginia.

In the spring of 1993, Helen Milligan learned she was ill with what was later diagnosed as cancer. According to the briefs, Helen asked Bettie Kennedy to return to Kansas City from her home in Virginia to assist Helen with steps for the disposition of her property.

On May 21, 1993, Bettie Kennedy and her mother, Sarah Kennedy (Helen's sister), went with Helen to Brotherhood Bank & Trust in Kansas City, Kansas. After gaining access to the box (box number 6099), which was maintained in the name of Helen and Malvin Milligan, Helen removed a large amount of cash as well as a $13,036.97 cashier's check made out in her name only. Bettie Kennedy testified that Helen wanted her to have the cash. In support of this claim, Sarah Kennedy testified at trial that Helen said, "Bettie, this is your monies from me to you." It was later determined that the amount of cash allegedly gifted to Bettie was approximately $80,000. The cashier's check apparently was to be cashed for Helen by Earnestine, in whose name Helen intended to grant a power of attorney.

Soon thereafter, two new deposit boxes were opened at Boatmen's First National Bank in Kansas City, Missouri in the names of Earnestine Kennedy and Malvin Milligan. First, on May 22, 1993, Earnestine, reportedly at Helen's request, took the $80,000.00 in cash, opened a safe deposit box (number 2337) and placed the cash in the box. She reluctantly included Malvin's name on the box at his insistence. Earnestine testified that she was aware of Helen's alleged gift of this money to Bettie when she placed the cash in the box.

Helen and Malvin Milligan had previously rented a safe deposit box (number 1734) in

both of their names at the same Boatmen's branch. Also on May 22, 1993, Helen gave Earnestine Kennedy a key to box number 1734 and told Earnestine that she wanted Earnestine and Bettie to have the money contained therein. Sarah Kennedy also testified that Helen had requested for all three of the women (Sarah, Bettie and Earnestine) to care for Malvin. According to Sarah, Helen once said that Malvin "couldn't manage money", and that she hoped Bettie and Earnestine would provide him any financial assistance he might need.[1]

Earnestine subsequently cashed the $13,036.97 cashier's check using a power of attorney allegedly given her by Helen Milligan.

On May 26, 1993, Earnestine opened the second new box (number 2335) at Boatmen's. In it Earnestine placed the cash proceeds from the $13,036.97 cashier's check, as well as approximately $16,060.35 in proceeds from several C.D.s, which were in Helen's name only and were removed from box number 1734. Malvin again insisted on placing his name on this box and Earnestine again complied with his request. Thus, Malvin's name was included as a co-renter on both of the boxes opened by Earnestine at Boatmen's.

On May 22, 1993, Helen Milligan executed a new will prepared by James Derting, a Kansas City lawyer. There was no residuary clause in the will, and the contents of the boxes were not mentioned. In addition, no provision of the will mentioned any financial gifts previously made or gifts to be made in favor of appellants.

On June 7, 1993, Malvin Milligan went to Boatmen's Bank, entered both boxes (numbers 2337 and 2335) and removed the money, placing it in two new boxes rented in his name only. Helen Milligan died the following day, and appellants filed this lawsuit on June 18, 1993. They contend the money, C.D.'s and cashier's check contained in the two boxes were the separate property of

Helen Milligan and gifted to appellants by Helen.

■■■ Our standard of review is guided by *Graves v. Atchison–Holt Elec. Coop.*, 886 S.W.2d 1 (Mo.App.1994). The trial court has broad discretion in ruling on the admissibility of evidence, and its ruling will not be overturned on appeal absent an abuse of discretion. *Id.* at 3. Review of the admission of evidence is restricted to whether the alleged error materially affected the case on its merits. *Id.* Error in admitting evidence is not grounds for reversal if it does not prejudice the complaining party or adversely affect the jury in reaching its verdict. *Id.* Evidence is prejudicial if it tends to lead the jury to decide the case on some basis other than the established propositions in the case. *Id.*

■ Appellants first claim the trial court plainly erred in admitting evidence and permitting closing argument regarding the contractual language of the rental agreements for the safe deposit boxes.

■■ The record clearly shows that appellants themselves offered the rental agreements into evidence. Therefore, their right to appeal this issue has been waived. Rule 84.13(a); *Missouri Pub. Serv. Co. v. Juergens*, 760 S.W.2d 105, 106 (Mo. banc 1988). Generally, an appellate court should not review an issue which was not put before the trial court. *Stone v. City of Columbia*, 885 S.W.2d 744, 747 (Mo.App.1994). However, we will proceed *ex gratia.*

Pursuant to Rule 84.13(c), plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom. *Baxter v. Acme Sheet Metal Works, Inc.*, 763 S.W.2d 733, 735 (Mo.App.1989).

Upon cross-examination Iona White, a manager at the Prospect branch of Boat-

---

1. As for the care of Malvin, Sarah Kennedy testified that Helen, while in the hospital, said:

"I'm not denying him of his marriage privileges are status with me, I'm not trying to take anything from him. I want that monies put away, and if Malvin needs some help, the monies will be there.

Malvin have his retirement coming in, he have his Social Security and the house on Cleveland, an income and his job, and I think this would be sufficient for Malvin to live off."

men's Bank, testified that the language of the rental agreements was as follows:

"The term 'lessee' as used herein shall also be construed to refer to joint lessees provided they bear the relationship to one another permitted under § 372.487 RSMo. If said box is a joint lessee as permitted between a bank ... and two or more lessees under § 372.487 RSMo, it shall be under the control of each of them as fully as though the box stood in the name of a sole owner, and each joint lessee shall have access to the box and shall have all other rights in said box as would be attendant to a sole owner. In all cases of joint lessees, it is hereby declared that each has such interest in the entire contents of said box as to entitle him or her to its possession thereof without liability to lessor for misappropriating same."

 The rental agreement referred to the Milligans as "joint tenants." In Missouri, a joint tenancy may be created in personal as well as real property. *Lee v. Guettler*, 391 S.W.2d 311, 314 (Mo.1965). Generally, when property is held in joint tenancy the tenants share one undivided estate, with the unique characteristic of the right of survivorship. *Remax of Blue Springs v. Vajda & Co.*, 708 S.W.2d 804, 806 (Mo.App.1986). By statute, a joint tenancy may be created among co-depositors of a bank account. § 362.470 RSMo 1994. However, in *Estate of Gulat*, 748 S.W.2d 79, 81 (Mo.App.1988), the court held "[t]he fact that [decedent's niece] was a co-renter of the box does not show that a joint tenancy was created in the contents of the box or that she had any interest in the money decedent placed in the box." This proposition appears to be followed by a majority of courts which have addressed this issue. *See* 10 Am.Jur.2d *Banks* § 474 (1963); *Cf. James v. Webb*, 827 S.W.2d 702, 705 (Ky.Ct.App.1991) (holding that safe deposit box lease agreement nam-

ing husband and wife as tenants in common did not create ownership interest in contents of box).

During closing argument, counsel for respondents again emphasized the language of the rental agreements. He said to the jury, "I suggest you look at ... the leases. [I]t says if the leased box is taken in the name of two or more persons it shall be under the control of each of them as fully as though in his name alone."

It was uncontroverted that before Malvin transferred the papers to a sole ownership box on June 7, 1993 (the day before Helen died), none of the safe deposit boxes in question were ever solely rented or "owned" by Helen. Assuming for the moment that the money in question was Helen's separate property, had she intended to segregate her property from Malvin's she could have done so simply by opening a box in her own name.

Even though appellants themselves introduced the rental agreements into evidence, they contend the admission of this evidence was irrelevant to the proper determination of ownership because the cash, cashier's check and certificates of deposit in Helen's name were her separate property. They also claim the admissions were prejudicial because they encouraged the jury to disregard the applicable law.

Appellants have challenged respondent's attempt to show that the rental agreements constitute written assent as required by § 451.250.2 RSMo 1994.[2] That section reads:

"This section shall not affect the title of any husband to any personal property reduced to his possession with the express assent of his wife; provided, that said personal property shall not be deemed to have been reduced to possession by the husband by his use, occupancy, care or protection thereof, but the same shall remain her separate property, unless by the terms of

---

**2.** § 451.250 RSMo 1994, otherwise known as the Married Women's Act, delineates which property held by married women constitutes separate property in Missouri. § 451.250.1 reads:

All real estate and any personal property, including rights in action, belonging to any woman at her marriage, or which may have come to her during coverture, by gift, bequest or inheritance,

or by purchase with her separate money or means, or be due as the wages of her separate labor, or has grown out of any violation of her personal rights, shall together with all income, increase and profits thereof, be and remain her separate property and under her sole control, and shall not be liable to be taken by any process of law for the debts of her husband.

such assent, *in writing,* full authority shall have been given by the wife to the husband to sell, encumber otherwise dispose of the same for his own use and benefit, (emphasis added)."

They further rely on § 362.487.1 RSMo 1994, which provides that "[n]o presumption of ownership of the contents of any such box shall be deemed to be created by the rental contract." Also, appellants claim it is reasonable to presume that the legislature was aware of the Married Women's Act when § 362.487 was promulgated. Consequently, according to appellants, the two statutory provisions should be read as if the they were intended to complement each other.

In other words, appellants believe that the rental agreements alone do not grant Malvin any ownership interest in the contents of the deposit boxes. Although this proposition does comport with the decision in *Gulat, supra,* our discussion does not end here for we must consider whether Helen had the intent to grant the alleged gifts to appellants and whether the money was hers to give away.

 A crucial issue under this point is whether Helen manifested an intent to grant gifts of a substantial portion of the Milligan's life savings to appellants. Under Missouri law, the requirements for completion of an inter vivos gift are "a present intention to make a gift on the part of the donor to the donee, and an acceptance by the donee, whose ownership takes effect immediately and absolutely." *In re Estate of Hoffman,* 490 S.W.2d 98, 103 (Mo.1973). Generally, a person claiming a gift has the burden of proving the gift by clear and convincing evidence. *Schultz v. Schultz,* 637 S.W.2d 1, 6 (Mo. banc.1982). When the donee does not have possession, gifts claimed after death of the donor are looked upon with suspicion by the courts, and must be established by clear and convincing testimony. *Id.* Some evidence was presented at trial suggesting that Helen did indeed intend to give appellants the money they are claiming in this appeal.

Such intent first appeared in early 1993 when Sarah Kennedy testified that Helen told her Bettie was the most "deserving" to receive the money contained in Helen and Malvin's deposit box at Brotherhood Bank. No other references to a proposed gift appears in the record until May 21, 1993 when the safe deposit box at Brotherhood Bank was emptied. After leaving the bank, Helen was taken to the Kansas University Medical Center for a scheduled appointment, and, upon arrival, she was admitted.[3] Once Helen was situated in her room at the hospital, Sarah Kennedy testified that her sister again alluded to the financial gifts to Bettie and Earnestine.

Appellants contend additional evidence of intent appears in the will executed by Helen shortly before her death. As previously noted, however, it contains no direct language concerning the alleged gifts. The only suggestion of a gift to appellants appears in Article III, paragraph 1, which reads in part:

I place my faith and trust in my sister and two nieces that they will provide necessary and responsible financial and emotional support for my husband as I have directed them. Their decisions are at their total and complete discretion.

 Although this provision does correspond with the testimony of Sarah Kennedy regarding the care of Malvin Milligan,[4] it is too vague to function as adequate evidence of intent on its own. After considering this provision together with the aforementioned testimony given at trial, the jury did not believe appellants established Helen's intent to gift them the property by clear and convincing evidence. After hearing all of the evidence, the jury returned a verdict for respondents. It is the jury's duty to judge the credibility of witnesses and to weigh and value a witness' testimony. *Havel v. Diebler,* 836 S.W.2d 501, 504 (Mo.App.1992). The jury is free to believe all, part or none of any witness' testimony. *Ryburn v. General Heating & Cooling, Co.,* 887 S.W.2d 604, 606 (Mo.App.1994).

---

**3.** Respondents do not allege undue influence as it was not adequately pleaded. Accordingly, we do not suggest that Helen Milligan in any way suffered from a weakened mental capacity.

**4.** *see supra* note 1.

Such a conclusion is supported by the testimony of Malvin Milligan and James Derting. Malvin testified that he and Helen described the money in the safe deposit boxes as "what's yours is mine and what's mine is yours." Mr. Derting also testified that Helen never discussed the making of any gifts to Bettie or Earnestine in 1989 when he first prepared a will for Helen or, more importantly, in 1993 when the new will was executed shortly before Helen's death. Considering the amount of money at stake, it is significant to note that neither Malvin nor Mr. Derting were ever aware of the gifts claimed by appellants prior to Helen Milligan's death.

In addition, the manner in which the Milligans typically handled their finances during their thirty-six year marriage belies the authenticity of appellants' assertions. This is especially true given the nature of the marital relationship Helen and Malvin shared. Mr. Derting testified that he saw Helen and Malvin "act very compassionate, very caring to one another, very respectful, like an old-time movie in real life." Even more compelling is the testimony of Bettie Kennedy who wrote Helen's obituary. In it she characterized their marriage as one "born in heaven" and that "they practiced what God instructs all married couples to do, love, honor and respect each other." Although at trial Bettie testified she had developed concerns whether Malvin truly respected Helen's wishes, the evidence shows that Helen and Malvin had a caring and loving relationship.

Malvin testified that he and Helen kept a metal box in their home in which they placed income from their three rental properties (each of which were jointly owned) and their individual earnings from work after paying their bills. Both Malvin and Helen worked so each had independent sources of income in addition to their rental income. However, the evidence presented at trial shows that all of the money in dispute was commingled in either the metal box kept at home or one of the various safe deposit boxes. Malvin also testified that they would allow the money in the metal box to accumulate before they would put the money into a C.D. and a safe deposit box. That the boxes were titled in both of their names is probative evidence of the Milligans' intent to treat the contents as marital property.

By analogy, the statutes relating to marriage dissolution are instructive in determining which property qualifies as marital property. In Missouri, there is a presumption that all property acquired after marriage is marital property,[5] "regardless of whether title is held individually or by the spouses in some form of coownership...." § 452.330.3 RSMo 1994.

Although there was evidence at trial that Malvin was unaware of how Helen managed some of her money, the jury determined that appellants failed to rebut the presumption that the assets in question were marital property.

Respondents simply argue that appellants failed to preserve for appellate review the admission of this evidence and argument.

We agree with respondents and find no abuse of discretion by the trial court.

After reviewing for plain error, we conclude the record lacks a showing of manifest injustice or miscarriage of justice on the part of the trial court. Rule 84.13(c).

Point I is denied.

■ Appellants next claim the trial court plainly erred when it sustained respondent's objection to the admission of evidence regarding Missouri's prohibition of ownership of contents within safe deposit boxes. According to appellants, such evidence is "cura-

---

5. § 452.330(2) RSMo 1986 defines marital property as "all property acquired by either spouse subsequent to marriage" unless:

(1) Property acquired by gift, bequest, devise or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property acquired by valid agreement of the parties;

(5) The increase in value of property acquired prior to marriage.

tively admissible." Appellants failed to preserve this issue. Rule 78.07. Nevertheless, we will again address it *ex gratia.*

■ Missouri law allows a party to reply to inadmissible evidence introduced by the opposing party with similar evidence if the following requirements are met: 1) the earlier evidence must have been inadmissible; 2) the introduction of rebutting evidence is needed to remove an unfair prejudice generated by the admission of inadmissible evidence; 3) the party asserting the doctrine did not object to the earlier evidence when it was offered and; 4) the rebuttal evidence is of the same type or character as the earlier inadmissible evidence. *Phoenix Redevelopment Corp. v. Walker,* 812 S.W.2d 881, 886 (Mo.App.1991).

Upon redirect examination of witness Iona White, appellants attempted to introduce evidence regarding § 362.487 RSMo 1994 in order to show the jury that the language of the rental agreement did not mean that co-renters also had an ownership interest in the contents of the deposit box. Respondents objected twice during appellant's redirect examination. The first was sustained because a leading question was asked. The second objection was also sustained. However, the answer was given prior to the objection and, therefore, was heard by the jury. The question was allowed and the answer ultimately stood.[6]

Following this exchange, appellants, outside the hearing of the jury, first requested the trial court take judicial notice of § 362.487. This request was granted. Appellants then requested the opportunity to read to the jury the final sentence of § 362.487, which states that there can be no presumption of ownership of the contents of a deposit box by virtue of the rental agree-

ment language. This second request was denied after respondents objected. However, the jury was properly instructed regarding the statute's legal import when they received their jury instructions.[7]

Appellants claim the trial court's denial of counsel's second request caused substantial prejudice and was, thereby, an abuse of discretion not to allow them to immediately rebut the language of the rental agreement. While appellants have correctly stated the doctrine of curative admissibility, it is not available to them in the instant case because no inadmissible evidence was admitted by the trial court. As we noted previously under Point I, the rental agreements were offered into evidence by the appellants themselves. The admission of the rental agreements was not an abuse of discretion by the trial court. As a result, the remaining requirements of the doctrine of curative admissibility need not be discussed because appellants should not be allowed to "cure" evidence they introduced.

■ As noted above, appellants have failed to properly preserve for appellate review their point on curative admissibility because the doctrine was not presented as requested relief in their motion for new trial. Rule 78.07. Finally, there is no demonstration in the record of manifest injustice or a miscarriage of justice. Rule. 84.13(c).

Point II is denied.

■ Appellants claim that the trial court erred in overruling their objection to the admission of evidence regarding real estate jointly held by Helen and Malvin. Appellants contend such evidence was irrelevant because they have made no claims with respect to the Milligan's real property.

6. The second question and objection occurred as follows:

"Mr. Youngs (attorney for appellants):
Q: [D]o you ever remember reading a contract that says the rental agreement contract creates no presumption as to the owner of the box?
A: No.
Mr. Kurtz (attorney for respondents): Your Honor, I object.
That's law and it's an improper question.
The Court: Sustained.

Mr. Youngs: Judge, he's asked her about ...
The Court: Overruled.
Mr. Youngs: All right. Nothing further, Judge."

7. Instruction No. 7 read:

"You are instructed that a rental contract for a safe deposit box and the fact that two or more persons are co-renters of such a box do not create any presumption of ownership or interest in the contents of that box."

Evidence was presented that Helen and Malvin jointly owned four houses; one was their home and the three others were used as rental properties from which the Milligans derived income from tenants.

During cross-examination, Bettie Kennedy testified that Helen had told her that the four homes were her separate property. However, the deeds clearly show that the properties were jointly held by Helen and Malvin.

■■■■ We find that this evidence was relevant as it related to Helen's state of mind and her understanding of which property was joint and which was separate. Therefore, there was no abuse of discretion by the trial court in admitting this evidence. The trial court is granted broad discretion in determining the relevance of evidence. *Koontz v. Ferber*, 870 S.W.2d 885, 891 (Mo.App.1993). Evidence is relevant if it tends to prove or disprove a fact in issue or corroborates other relevant evidence. *Id.*

■■ Appellants objected on several occasions to the admission of evidence regarding the ownership of the various properties. However, it was appellants who introduced the deeds into evidence and later stipulated that "the deeds show what they show." Therefore, because the trial court was unable to rule on a valid objection as to the admission of the deeds, appellants have waived this issue. *Wagner v. Piehler*, 879 S.W.2d 789, 793 (Mo.App.1994).

On this issue, we decline to review for plain error. *Krame v. Waller*, 849 S.W.2d 236, 241 (Mo.App.1993).

Point III is denied.

Affirmed.

All concur.