Martha BRANDT, Appellant,

v.

Bela CSAKI, Respondent.

No. WD 51050.

Missouri Court of Appeals,
Western District.

Nov. 19, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 24, 1996.

Application to Transfer Denied
Feb. 25, 1997.

Margaret M. O'Leary, Chicago, Illinois, Catherine A. Donnelly, Gregory W. Vleisides, Vleisides, Donnelly & O'Leary, Kansas City, for appellant.

Thomas W. Wagstaff, Gregory J. Minana, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for respondent.

Before EDWIN H. SMITH, P.J., and BRECKENRIDGE and ELLIS, JJ.

BRECKENRIDGE, Judge.

Martha Brandt appeals from the trial court's judgment following a jury verdict for Dr. Bela Csaki in Ms. Brandt's medical malpractice action. Ms. Brandt claims that she suffered nerve injuries as a result of Dr. Csaki's failure to timely diagnose and treat an injury caused by a diagnostic test Dr. Csaki ordered. Ms. Brandt raises seven points on appeal. She claims that the trial court erred by (1) denying her motion for a directed verdict; (2) denying her motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial; (3) allowing her to be impeached with a prior abandoned claim against the doctor who performed the diagnostic test; (4) allowing Dr. Csaki to make adverse reference in closing argument to her failure to call her husband to testify; (5) admitting evidence of Dr. Csaki's successful treatment of the saddle embolus; (6) allowing Dr. Csaki to use an illustration; and (7) admitting Dr. Csaki's testimony concerning his nerve sheath hemorrhage theory.

Because Ms. Brandt had the burden of proof at trial, the trial court did not err in denying her motion for a directed verdict. The trial court also properly denied Ms. Brandt's JNOV or new trial motion because the jury may not have been persuaded by her evidence and, contrary to her argument, Dr. Csaki was not required to present substantial evidence in support of his defense. Further, there was no manifest injustice resulting from the trial court's admission of the evidence challenged by Ms. Brandt in her Points IV through VII. Since Ms. Brandt is not entitled to relief on any of her seven points relied on, the judgment of the trial court is affirmed.

The evidence viewed in a light most favorable to the judgment reveals that while at home, on February 9, 1990, Ms. Brandt experienced severe pain in her groin and legs, as well as numbness and tingling in her feet. Due to her condition, Ms. Brandt was admitted to the Medical Center of Independence, where Dr. Csaki examined her. Dr. Csaki diagnosed Ms. Brandt's problem as a saddle embolus, which is a blood clot located where the aorta bifurcates to become the iliac arteries that become the femoral arteries supplying the legs with blood. To confirm his diagnosis, Dr. Csaki ordered an angiogram for Ms. Brandt which was performed by Dr. Robert Schwegler.

An angiogram is a procedure where a needle is stuck into an artery to insert a catheter. Radiopaque contrast material is then pumped into the artery through the catheter to create a road map of the arteries. Any blockage is apparent in an X-ray of the arterial system. Dr. Schwegler performed the angiogram through the left axillary artery, a major artery in the upper arm near the arm pit. During the angiogram, Ms. Brandt felt a sharp pain like "an electric shock go through the top part of [her] body." Ms. Brandt was in such pain during the angiogram that Dr. Csaki was summoned to the radiology department to authorize medication for her pain.

After Dr. Schwegler performed the angiogram and confirmed Dr. Csaki's diagnosis, Dr. Csaki operated and successfully removed several small blood clots from the lower aorta in Ms. Brandt's groin. During recovery, Ms. Brandt initially had minimal bruising and swelling at the puncture site of the angiogram. On February 16, 1990, she began to experience numbness and tingling in her left arm, along with bruising and swelling down to the elbow area. At approximately 8:00 a.m. on that date, Dr. Kunz, a radiologist, examined Ms. Brandt in response to her complaints of tingling and numbness. Dr. Kunz ordered periodic measuring of her arm to see if the swelling was stable and monitoring of her complaints. He noted on her chart that he "would expect this to resolve."

On February 17, Ms. Brandt began experiencing significant pain, numbness and loss of motor functions in her hand. After being informed of this condition, Dr. Csaki ordered a Doppler ultrasound to diagnose Ms. Brandt's problems. The ultrasound revealed

a small pseudoaneurysm in the artery where the angiogram had been performed. A pseudoaneurysm is a soft blood clot and is a known risk of the angiogram procedure. The pseudoaneurysm was caused by the puncture of the artery during the angiogram. Dr. Csaki determined that Ms. Brandt needed to have the pseudoaneurysm surgically removed.

The surgery could not be performed immediately, however, because Ms. Brandt was on a blood thinning medication, Coumadin. Dr. Csaki prescribed Vitamin K to reverse the blood thinner, but it took three days to take effect. Although, there were quicker methods available to reverse the effect of the blood thinner, they would have increased the risk of blood clots, which could have been life threatening. Dr. Csaki determined that these other options posed too high a risk, considering that Ms. Brandt had a bad mitral value in her heart, artrial fibrillation and, as an individual who has already had an embolus, was at an increased risk of having a recurrence. As a result, the removal of the pseudoaneurysm did not occur until February 20. Two months later, Ms. Brandt was diagnosed with permanent nerve injury to her left arm, although the extent of the injury at the time of trial was disputed.

Ms. Brandt originally brought a medical malpractice action against Dr. Schwegler, the Medical Center of Independence and Dr. Csaki for causing her nerve damage. Her first amended petition named only Dr. Csaki, however, alleging that his delay in diagnosing and removing the pseudoaneurysm negligently caused her injury.

Trial commenced on February 14, 1995. Ms. Brandt presented her theory that Dr. Csaki was negligent in failing to diagnosis and treat her when he was notified of the loss of motor function in Ms. Brandt's arm on February 17, 1990. Her expert testified that the pseudoaneurysm at the site of the angiogram compressed the nerves in her arm, and immediate relief of the pressure was imperative because the longer the nerve was compressed, the greater the likelihood of permanent injury. She claimed Dr. Csaki deviated from the standards of care of his profession by failing to diagnose an emergency situation

when he was notified of the loss of motor functions, and that the delay in treatment caused permanent nerve damage.

In his defense, Dr. Csaki introduced evidence that Ms. Brandt's nerve injury was the result of a hemorrhage within the sheath covering the median nerve, which was caused when the nerve was struck during the angiogram, and was not the result of pressure on the nerve caused by the pseudoaneurysm. Dr. Csaki and his expert, Dr. Robert Williams, testified that, to a reasonable degree of medical certainty, any alleged delay in diagnosing and removing the pseudoaneurysm from Ms. Brandt's arm was not the cause of her injury. According to their testimony, Ms. Brandt's nerve had been completely and irreversibly injured by the time the angiogram was completed.

In addition, Dr. Csaki and his expert testified that he timely diagnosed the pseudoaneurysm. In their view, the symptoms originally exhibited by Ms. Brandt were consistent with normal reactions to an angiogram, and did not indicate any unusual circumstance until February 17. At that time, Dr. Csaki ordered the Doppler ultrasound, which was performed the next morning and revealed the pseudoaneurysm. Dr. Williams testified that Dr. Csaki exercised correct judgment "in not operating as an emergency, and letting her Coumadin drift down to a reasonable level where he could operate without risk of undue bleeding, knowing there was a risk to the arm, but that being overshadowed by the risk of a new blood clot that would be catastrophic."

During the trial, Ms. Brandt moved for a directed verdict, which the trial court denied. After the jury entered a verdict in favor of Dr. Csaki, Ms. Brandt filed a motion for a JNOV or, in the alternative, a new trial, arguing that the jury's verdict was against the weight of the evidence. The trial court overruled Ms. Brandt's motion and she filed a timely appeal.

In her first point on appeal, Ms. Brandt contends that the trial court erred by denying her motion for a directed verdict because the evidence established that her injury was caused by Dr. Csaki's failure to properly and

timely diagnose and treat her nerve compression. She argues that any defense theory of the cause of her injury was unsupported by competent and substantial evidence.

An appeal of the denial of a motion for a directed verdict involves only questions of law. *Hammer v. Waterhouse,* 895 S.W.2d 95, 99 (Mo.App.1995). A directed verdict should only be granted if reasonable persons could not differ as to the outcome of the case. *Id.* A verdict is generally not directed in favor of the party with the burden of proof "no matter how overwhelming that party's evidence may be or how minuscule the other party's evidence may be; a directed verdict in favor of the party having the burden of proof (usually the plaintiff) is never based upon [that party's] evidence." *Brandt v. Pelican,* 856 S.W.2d 658, 664 (Mo. banc 1993). The rationale underlying this principle is that the party with the benefit of the burden of proof does not have to present any evidence at all, and can rely solely on the jury disbelieving the other party's evidence. *Id.* at 664–65.

The exception to this rule is when there are no questions of fact left in the case upon which the jury may pass, but only questions of law which would not be decided by the jury. *Id.* at 664. This occurs when the non-movant admits, in pleadings, by counsel in open court or by testimony at trial, the truth of all facts upon which the claim of the movant rests. *Id.* It may also occur when "the proof is altogether of a documentary nature and the authenticity and correctness of the documents are unquestioned, and if such proof is unimpeached and uncontradicted...." *Id.*

The trial court did not err in denying Ms. Brandt's motion for a directed verdict. As the plaintiff, she had the burden of proof. Dr. Csaki did not admit the truth of the basic facts upon which Ms. Brandt's claim rests. Nor does this case involve documentary evidence, the nature, authenticity and correctness of which are unquestioned. Therefore, Dr. Csaki was entitled to have the case go to the jury. Point I is denied.

As an additional point of error, Ms. Brandt claims the trial court wrongfully denied her motion for a JNOV or, in the alternative, a new trial because the evidence incontrovertibly showed that her nerve injury was caused by Dr. Csaki's negligence. She also claims that the trial court erred by failing to grant her a new trial because the verdict is against the weight of the evidence.

In reviewing the verdict of a jury in a civil case, the appellate court does not "determine the credibility of the witnesses, resolve conflicts in testimony, or weigh the evidence." *Powell v. Norman Lines, Inc.,* 674 S.W.2d 191, 197 (Mo.App.1984) (quotation omitted). It is within the prerogative of a jury to find against the party with the burden of proof, even if that party's evidence is uncontradicted and unimpeached. *Parsons Construction Co. v. Missouri Public Serv. Co.,* 425 S.W.2d 166, 172 (Mo.1968). Here, Dr. Csaki did not have to offer any evidence to support a verdict in his behalf. *Id.* Therefore, because Ms. Brandt had the burden of proof, rather than Dr. Csaki, her claims based on the sufficiency and weight of the evidence are without merit. Point II is denied.

As her third point on appeal, Ms. Brandt claims the trial court erred by allowing Dr. Csaki to cross-examine her concerning her prior abandoned malpractice claim against Dr. Schwegler, the doctor who performed the angiogram. The trial court is vested with discretion in determining the scope and extent of cross-examination. *Embree v. Norfolk & Western Ry. Co.,* 907 S.W.2d 319, 325 (Mo.App.1995). This court will not overrule the trial court's decision unless it clearly abused that discretion. *Id.*

During cross-examination, Dr. Csaki asked Ms. Brandt whether she had abandoned a prior pleading alleging that Dr. Schwegler caused her injury while performing the angiogram. Ms. Brandt objected to this line of questioning but the trial court overruled her objection. Ms. Brandt does not dispute that she abandoned her claim against Dr. Schwegler by omitting him from her amended petition. When an amended petition is filed, the original petition is abandoned by the subsequent filing. *Evans v. Eno,* 903 S.W.2d 258, 260 (Mo.App.1995).

Although Dr. Csaki's counsel asked her several questions, only one question was answered by Ms. Brandt. That question and answer are as follows:

> Q. Ms. Brandt, you have previously filed documents in which you state that Dr. Schwegler performed an aortagram via the left axillary approach and that that's what caused you severe and permanent injuries of the median nerve, haven't you?

> A. At that time, that's what I thought.

■ Missouri courts have consistently held that abandoned pleadings containing statements of fact are admissible as admissions against interest against the party who originally filed the pleading. *Carter v. Matthey Laundry & Dry Cleaning Company,* 350 S.W.2d 786, 791 (Mo.1961); *Lazane v. Bean,* 782 S.W.2d 804, 805 (Mo.App.1990); *DeShon v. St. Joseph Country Club,* 755 S.W.2d 265, 268 n. 1 (Mo.App.1988). Only allegations of fact are admissible; conclusions of law are not admissible to impeach the witness. *Lazane,* 782 S.W.2d at 805. "It has been held that extra judicial admissions are competent evidence even though in the form of conclusions as to the ultimate fact at issue." *DeArmon v. City of St. Louis,* 525 S.W.2d 795, 803 (Mo.App.1975) (quotation omitted). Therefore, the question before this court is whether Ms. Brandt's abandoned pleading consisted of admissible statements of facts or inadmissible conclusions of law.

This case is quite similar to the factual situation of *Lazane.* In *Lazane,* the plaintiff filed a medical malpractice action against numerous doctors, a hospital and a professional corporation. 782 S.W.2d at 805. In the plaintiff's final amended petition, no defendants were named except Dr. Bean and the hospital. *Id.* The plaintiff was cross-examined with respect to the allegations in his prior pleading that a doctor, other than Dr. Bean, was responsible for the care and treatment of the plaintiff. The court affirmed the trial court's decision to allow the abandoned pleadings to be used for impeachment because they consisted of statements of fact inconsistent with the plaintiff's present claim. *Id.* at 806.

Here, Ms. Brandt originally named the Medical Center of Independence and Drs. Schwegler and Csaki in her petition, on the grounds that all were responsible for her injuries. In her final amended petition, Ms. Brandt named only Dr. Csaki as a defendant. In Ms. Brandt's abandoned pleading against Dr. Schwegler, she alleged that Dr. Schwegler "improperly, inadequately and insufficiently performed a thoracoabdominal aortogram" which caused a pseudoaneurysm, and he failed to discover and treat the injury, or inform Ms. Brandt of the injury. In addition, Ms. Brandt alleged that there was a causal relationship between Dr. Schwegler's actions and her permanent injury. Such statements are not legal conclusions even though they are in the form of conclusions as to the ultimate facts at issue. *DeArmon,* 525 S.W.2d at 803. These statements were inconsistent with those in her amended petition, which alleged that Dr. Csaki alone caused her injury. As such, the trial court properly relied upon the authority of *Lazane* in permitting Dr. Csaki to impeach Ms. Brandt with the abandoned pleading. Point III is denied.

■ In her fourth point, Ms. Brandt claims the trial court erred by allowing Dr. Csaki to make a negative inference from her failure to call her husband as a witness during the trial. She argues that this reference was improper because her husband had no vital knowledge concerning the case and any testimony he would offer would have been cumulative. Mr. Wagstaff, Dr. Csaki's attorney, made the following closing argument:

> Mr. Wagstaff: Thank you, Your Honor. She's told us about problems she has around home, she's told us about problems of things she can't do. We did not hear from her husband, Mr. Brandt did not testify. It's curious, and—

> Ms. O'Leary: Objection, Judge. Mr. Brandt's mother died and he was unable to remain and testify yesterday.

> Mr. Wagstaff: We didn't hear from Mr. Brandt throughout all of last week and this week and he hasn't talked about problems that he's visualized that she's had, so I think you are allowed to assume that what-

ever he would have said would not have been helpful to her.

The trial court never ruled on Ms. Brandt's objection. It is the objecting party's responsibility to insure that the trial court has heard and ruled on every objection. *Eide v. Midstate Oil Co.*, 895 S.W.2d 35, 41 (Mo.App.1995). The objecting party's failure to obtain a ruling on an objection preserves nothing for appellate review. *Id.* Therefore, Ms. Brandt has not preserved her fourth point on appeal. This court has examined the record for manifest injustice triggering plain error relief and finds none. Point IV is denied.

As her final three points on appeal, Ms. Brandt contends that the trial court erred by admitting evidence of Dr. Csaki's successful treatment of her saddle embolus condition, by admitting an illustration purporting to depict her embolus, and by admitting testimony concerning a nerve sheath hemorrhage theory. For the reasons that follow, this court finds that Ms. Brandt has failed to preserve her last three claims of error.

According to Rule 78.07, allegations of error must be raised in a motion for a new trial in order to preserve them for appellate review. "General allegations in the motion for new trial are adequate if based upon specific objections or requests made during the trial." *Bowman v. Burlington Northern, Inc.*, 645 S.W.2d 9, 11 (Mo.App.1982). However, even in the situation where the appealing party properly objected at trial, as Ms. Brandt did in this case, "the allegations [in the motion for new trial] must be *sufficiently definite to direct the trial court's attention to the particular acts or rulings asserted to be erroneous.*" *Id.* The historical rationale underlying this rule is that the trial court should have the last opportunity to correct any errors it made during the trial before review by the appellate court. *Fruit Supply Co. v. Chicago, B. & Q.R. Co.*, 119 S.W.2d 1010, 1011 (Mo.App.1939).

Here, Ms. Brandt made a general allegation in her motion for new trial purporting to encompass "[a]ll other objections made by Plaintiff to evidence elicited by defendant that were overruled during the course of this trial ... pursuant to Rule 78.07." Although Ms. Brandt made objections with respect to each contention she now raises on appeal, her "catch-all" allegation in her motion fails to direct the trial court's attention with particularity to the alleged errors.

In order to meet the standard of Rule 78.07, the allegations in the motion must be sufficient to give the trial court an opportunity to correct its errors, without requiring the court to resort to aid extrinsic to the motion. *Bowman*, 645 S.W.2d at 12. The rules governing motions for new trial must be strictly enforced. *Id.* at 13. Therefore, Ms. Brandt failed to preserve her final three points on appeal because the trial court was not able to engage in meaningful review without extrinsic assistance. When a claim of error is not properly preserved, the only review is for plain error, reserved for situations where manifest injustice or a miscarriage of justice has occurred. *Hammer*, 895 S.W.2d at 106.

As her fifth claim of error, Ms. Brandt complains that the trial court mistakenly admitted irrelevant evidence of Dr. Csaki's successful treatment of her saddle embolus. The trial court has broad discretion in determining whether evidence is relevant. *Kennedy v. Milligan*, 915 S.W.2d 784, 792 (Mo.App.1996). Relevant evidence is any evidence that "tends to prove or disprove a fact in issue or corroborates other relevant evidence." *Id.*

In this case, Ms. Brandt argues that the evidence was inadmissible because it was not relevant to the performance of the angiogram or the standard of care for treatment of the resulting injury. Ms. Brandt's argument misconstrues the purpose for which the evidence was offered. At no point during the trial did Dr. Csaki argue that the evidence of the successful procedure was relevant to the standard of care for the angiogram. To the contrary, the saddle embolus condition was relevant because there was expert testimony that such a prior condition would affect Dr. Csaki's decisions concerning the treatment of the nerve injury. In light of this testimony,

there is no manifest injustice or miscarriage of justice. Point V is denied.

■ In her sixth point relied on, Ms. Brandt alleges that the trial court erred by permitting Dr. Csaki to use an illustration of the embolus.[1] Ms. Brandt claims that the illustration was irrelevant and prejudicial because it did not assist the jury in making its decision and it unfairly bolstered Dr. Csaki's credibility.

This exhibit was a medical illustration that allegedly depicted the condition of the embolus. " '[D]emonstrative' evidence involves the production in court of such things as models, maps, photographs, or X-ray pictures which have no probative value in themselves but serve merely as visual aids to the trier of the facts in comprehending the verbal testimony of a witness." 32 C.J.S. § 601, p. 757–58. The illustration was demonstrative evidence because it was used to assist the jury's understanding of the facts in this complicated medical case.

■ The trial court has discretion concerning the admission of demonstrative evidence. *McElhiney v. Mossman,* 850 S.W.2d 369, 371 (Mo.App.1993). In this case there was testimony by Drs. Csaki and Williams that the drawing was a fair and accurate representation of the embolus. Although Ms. Brandt argued that the drawing was not relevant, the trial court determined that the evidence was admissible. The trial court has discretion in its ruling that the evidence was admissible. *Kennedy,* 915 S.W.2d at 792.

Admission of exhibits like the one in question has long been upheld by Missouri courts. *See Blum v. Wilkinson,* 509 S.W.2d 6, 8 (Mo.1974) (diagram of skid marks on highway where accident occurred admissible to assist jury in understanding oral testimony); and *Daniels v. Goeke,* 191 Mo.App. 1, 176 S.W. 301, 302 (Mo.App.1915) (drawing of the interior of a grain mill where injury occurred admissible to help the jury understand the verbal descriptions). This case involved complicated medical terminology and concepts

for which the presentation of illustrations would have assisted the jury's understanding. Given the proper foundation testimony, as well as the exhibit's potential to aid the jury in this case, there is no manifest injustice or miscarriage of justice worthy of plain error relief. Point VI is denied.

■ In her final point on appeal, Ms. Brandt contends that the trial court erred in allowing Dr. Csaki to testify regarding his nerve sheath hemorrhage theory. Dr. Csaki presented evidence that the nerve was stuck during the angiogram causing a nerve sheath hemorrhage which immediately caused irreversible nerve damage. Ms. Brandt contends this was inadmissible testimony because it had no proper evidentiary basis since it was based entirely on hearsay and speculation.

■ This claim is without merit. What Ms. Brandt calls "theory" is actually the opinions, to a reasonable medical certainty, offered by Drs. Csaki and Williams. It is within the trial court's discretion to admit or exclude opinion testimony from an expert witness. *Kummer v. Cruz,* 752 S.W.2d 801, 807 (Mo.App.1988). An expert's opinion must be based upon facts actually established. *Bilderback v. Skil Corp.,* 856 S.W.2d 73, 75 (Mo.App.1993). The question of sufficiency of facts to support admission of an expert's opinion is a question of law for the court. *Holtgrave v. Hoffman,* 716 S.W.2d 332, 335 (Mo.App.1986).

■ In this case, Dr. Csaki testified concerning his treatment of Ms. Brandt and her afflictions. A medical expert's opinion based upon examination and treatment is substantial evidence, and its weight is to be determined by the jury. *Kummer,* 752 S.W.2d at 807. In addition, there was testimony that there was a direct stick to the nerve in Ms. Brandt's arm during the angiogram, as evidenced by the "electric shock" through the upper part of her body. The symptoms that Ms. Brandt suffered were consistent with a nerve sheath hemorrhage. Ms. Brandt's

---

1. The illustration referred to in oral argument and later filed with this court depicted a nerve sheath hemorrhage, not an embolus. Because the errors addressed on appeal are limited to those raised in the point relied on, *In re Marriage of Caby,* 825 S.W.2d 56, 61 (Mo.App.1992), the correctness of admitting the illustration of the nerve sheath hemorrhage will not be addressed.

competing theory of compression on the nerve from the pseudoaneurysm or a hematoma was not supported by the conditions discovered during surgery to remove the pseudoaneurysm, in that the pseudoaneurysm was not large and Dr. Csaki did not find the nerve under pressure at the time he operated on the arm. Drs. Csaki's and Williams' opinions concerning the nerve sheath hemorrhage had a substantial basis in fact.

There was no error, plain or otherwise, in the admission of evidence concerning a nerve sheath hemorrhage. Point VII is denied.

The judgment of the trial court is affirmed.

All concur.