In re the MARRIAGE OF Patricia A. WRIGHT and James D. Wright.

Patricia A. Wright, Respondent,

v.

James D. Wright, Appellant.

No. 22565.

Missouri Court of Appeals, Southern District, Division One.

May 12, 1999.

Robert P. Warden, Christopher S. Warden, Joplin, for appellant.

Gayle L. Crane, Law Offices of Sotta and Crane, P.C., Joplin, for respondent.

CROW, Judge.

James D. Wright ("J.D.")[1] appeals from a judgment dissolving his marriage to Patricia A. Wright ("Pat").[2] The first of J. D.'s two points relied on avers the trial court erred in valuing J. D.'s "retirement fund" at $422,338.14. J. D.'s second point maintains the improper valuation resulted in an unjust division of the marital property.

J.D. (born October 1 1938) married Pat (born September 19, 1943) on October 7, 1983. At that time, J.D. was employed by the "Jackson [Mississippi] Fire Department."

Pat, a registered nurse, was employed as a surgical assistant by a neurosurgeon in Jackson before the marriage. After the marriage, Pat went to work at a Jackson hospital.

J.D. was injured fighting a fire in 1986. He retired in 1990 after 29 years and 10 months at the fire department.

J.D. and Pat moved to Joplin, Missouri, in 1991. At time of trial (December 29,

---

1. At trial, James D. Wright identified himself as "J. D. Wright." His wife, Patricia A. Wright, referred to him as "J. D." For brevity and clarity, this opinion refers to Mr. Wright as "J. D ." No disrespect is intended.

2. At trial, J.D. referred to his wife, Patricia A. Wright, as "Pat." For brevity and clarity, this opinion refers to Ms. Wright as "Pat." No disrespect is intended.

1997), Pat was Director of Surgical Services at St. John's Regional Medical Center in Joplin, where she had worked since July 4, 1991.

The issue about the value of J. D.'s "retirement fund" has a curious history.

J. D.'s brief avers that one of the "local court rules" requires the parties in a dissolution action to file a "DR Form 1" before the case will be set for trial.

The record contains a DR Form 1 filed by Pat on March 19, 1997. That document, comprising nine pages, is henceforth referred to as "Pat's DR 1." Page 8 of Pat's DR 1 is denominated "NON–MARITAL PROPERTY—HUSBAND." One of the entries on that page shows an asset identified as "City of Jackson–Mon." with a "Present Value" of "1,710.84."

The record also contains a DR Form 1 filed by J.D. on July 10, 1997. That document, comprising eleven pages, is henceforth referred to as "J. D.'s DR 1." Page 10 of J. D.'s DR 1 is denominated "HUSBAND'S NON–MARITAL PROPERTY." One of the entries on that page shows an asset identified as "City of Jackson, monthly" with a "Present Value" of "1,713.84." [3]

At trial, Pat (the petitioner) presented her evidence first. The first witness called by Pat's lawyer was J. D.

Under questioning by Pat's lawyer, J.D. testified his "gross [retirement] pay" is $2,124.01 per month. As this court comprehends J. D.'s testimony, $247.17 is deducted from his "gross pay" each month for "health insurance and life insurance."

Evidently, taxes are also withheld, leaving J.D. "$1,713.84 a month net." [4]

After Pat's lawyer examined J. D., J. D.'s lawyer questioned J.D. During that segment of J. D.'s testimony, J. D.'s lawyer handed J.D. an eleven-page document marked Petitioner's Exhibit 1 ("Exhibit 1"). [5]

Exhibit 1 appears to be a photocopy of J. D.'s DR 1. [6] However, there are handwritten entries on Exhibit 1 that do not appear on J. D.'s DR 1. [7]

On page 8 of Exhibit 1 is a printed heading denominated "Retirement and Pension." Beneath that heading is the following typewritten entry: "See non-martial husband." That segment of page 8 of Exhibit 1 is identical to the corresponding segment of page 8 on J. D.'s DR 1.

However, immediately beneath the above-quoted typewritten entry on page 8 of Exhibit 1 is a handwritten entry that appears to read:

"Fire Department      2,124.01 mth
                       $422,338.14"

This opinion henceforth refers to the above-quoted handwritten entry as "the Disputed Entry." No such entry appears on page 8 of J. D.'s DR 1 (or, for that matter, anywhere on Pat's DR 1).

When J. D.'s lawyer handed Exhibit 1 to J. D., this dialogue ensued:

"[J. D.'s lawyer]: Let me ask you some questions about ... Petitioner's Exhibit # 1. Has this been admitted, Your Honor?

[Pat's lawyer]: No.

[J. D.'s lawyer]: It has not been offered?

---

3. That value was assigned by J.D. J. D.'s DR 1 shows Pat assigned the asset a value of "1,710.84" (the value shown on Pat's DR 1).

4. An attentive reader will recall that figure is the amount shown by J.D. on his DR 1. This court deduces that the sum withheld each month for taxes is $163.

5. Pat's lawyer did not ask J.D. anything about Exhibit 1 during direct examination.

6. The argument following the first point in J. D.'s brief is susceptible to an inference that J. D.'s lawyer believes Exhibit 1 is a photocopy of Pat's DR 1. As stated above, it appears to this court that Exhibit 1 is a photocopy of J. D.'s DR 1.

7. The assets and their respective values listed on J. D.'s DR 1 are typewritten, as are the assets and their respective values on Pat's DR 1.

BY THE COURT: No.

[J. D.'s lawyer]: Your Honor, I'd offer Petitioner's Exhibit # 1.

[Pat's lawyer]: No objection.

BY THE COURT: Exhibit # 1 is admitted."

J. D.'s lawyer then questioned J.D. about numerous entries on Exhibit 1 including two typewritten entries on page 8 regarding life insurance. The second of those entries is seven lines above the Disputed Entry. J. D.'s lawyer asked J.D. nothing about the Disputed Entry.[8]

On February 17, 1998 (seven weeks after trial), the trial court made a comprehensive entry on the docket sheet setting forth the court's findings and conclusions, including this:

"[T]he Court finds that [Pat's] St. John's retirement benefit is marital property as is at least 7/29ths of [J. D.'s] retirement benefit. The computation as to its total value, said by [Pat] to be $422,338.14 [9], is difficult for the Court to compute. However, it is the Court's finding, having considered the approximate values as discussed, that each party shall receive his or her total retirement benefit[.]"

At the conclusion of the docket entry is a notation indicating that the clerk sent a copy of the entire entry by facsimile transmission to Pat's lawyer and J. D.'s lawyer.

The next event of record occurred May 12, 1998. An entry on the docket sheet that date reads: "Notice Setting Hearing on Clarification on Judgment Monday, June 1, 1998 at 1:30 P.M. in Division III Courtroom in Joplin."

The next entry on the docket sheet is dated June 2, 1998. It sets forth several respects in which the trial court "amends and clarifies its February 17, 1998 docket entry." J. D.'s retirement benefits are not mentioned in the June 2, 1998, entry, but one provision thereof is: "To the extent there is a disproportionate division of assets the Court finds there is more fault on the part of [J. D.]." At the conclusion of the June 2, 1998, entry is a directive that Pat's lawyer prepare a "formal judgment entry."

Judgment was ultimately entered August 12, 1998. The judgment values J. D.'s "retirement benefit" at $422,338.14 and declares that "7/29ths" of it is marital property. The judgment assigns the 7/29 a value of $101,943.68 and awards it to J.D. as marital property. The judgment assigns the remaining 22/29 a value of $320,-394.46 and sets it apart to J.D. as his "nonmarital property ."

J. D.'s first point relied on reads:

"The trial court erred in valuing [J. D.'s] retirement fund at $422,338.14 in violation of section 452.330 RSMo. in that there was no substantial and competent evidence before the court to support the court's value thereby resulting in an unjust distribution of marital property."

J. D.'s brief, authored by his lawyer, proclaims:

"[T]his attorney did not see any type of hand written entry on Petitioner's Exhibit # 1 regarding [J. D.'s] retirement at the time [J.D.] was being cross-examined. . . . It is extremely hard to conceive how a figure such as $422,388.14 would have gone unnoticed given the fact that this attorney went to great lengths to discuss the life insurance . . . just seven lines above the mysterious hand written entry. . . . This attorney can only state that the hand written figure of $422,338.14 was not on petitioner's exhibit # 1 during the cross-examination of [J. D.]. It is impossible for an

8. As explained more fully *infra,* J. D.'s lawyer maintains in this appeal that the Disputed Entry was not on page 8 of Exhibit 1 at the time he questioned J.D. about page 8 at trial.

9. $422,338.14 is the second of the two amounts in the Disputed Entry on page 8 of Exhibit 1.

attorney to make an objection to evidence that does not exist."

This court gathers from the above argument that J. D.'s lawyer maintains the Disputed Entry was never presented as evidence at trial, hence there was no evidentiary support for the trial court's finding that J. D.'s "retirement benefit" is worth $422,338.14. J. D.'s brief correctly points out that the Disputed Entry is the only basis in the record for the trial court's valuation of J. D.'s "retirement benefit" at $422,338.14.

Pat's brief responds: "[J. D.'s] contention that the [Disputed Entry] on [Exhibit 1] appeared after it was introduced into evidence is untrue."

This court cannot determine from the record when the Disputed Entry was placed on page 8 of Exhibit 1. However it is obvious that the Disputed Entry was there when the trial court made its docket entry February 17, 1998. The portion of that entry quoted earlier in this opinion recites that Pat says the value of J. D.'s "retirement benefit" is $422,338.14. As previously noted, the Disputed Entry is the only source in the record for that assertion.

It should have been apparent to J. D.'s lawyer from the trial court's February 17, 1998, docket entry that the court might value J. D.'s "retirement benefit" at $422,-338.14. Nothing in the record indicates J. D.'s lawyer challenged that segment of the February 17, 1998, docket entry. J. D.'s lawyer had ample time to do so, as more than three months elapsed between that entry and the June 1, 1998, "clarification" hearing. Two and a half more months passed after that hearing before the trial court entered judgment.

There is a procedure for resolving the issue of when the Disputed Entry was made on page 8 of Exhibit 1. Rule 81.15(d) [10] provides, in pertinent part:

"If there is any dispute concerning the correctness of any legal file ... the par-ty disputing the correctness thereof shall designate in writing to the appellate court those portions of the legal file ... that are disputed. Such designation shall be filed with the appellate court within fifteen days after the legal file ... is filed.... The appellate court shall direct the trial court to settle the dispute and to certify the correct contents of such portion to the appellate court, and such certification by the trial court shall become a part of the record on appeal."

The copy of Exhibit 1 furnished this court is in a supplemental legal file; Pat filed it March 26, 1999. J.D. did not designate in writing to this court any disputed portion of Exhibit 1 within fifteen days thereafter. Consequently, J.D. did not utilize the procedure for solving the mystery about the Disputed Entry.

■ An appellate court must accept the record as absolute verity; if the record does not reflect the facts, it should have been corrected in the trial court. *Ragsdale v. Young*, 215 S.W.2d 514, 517[4] (Mo. App.1948). *Accord: Hendershot v. Minich*, 297 S.W.2d 403, 410[14] (Mo.1956).

■ This court cannot accept the statement of J. D.'s lawyer that the Disputed Entry was not on page 8 of Exhibit 1 when J. D.'s lawyer questioned J.D. about Exhibit 1 at trial. As this court explained in *Re Redemption Proceeding by Hokanson*, 706 S.W.2d 559, 560[1] (Mo.App. S.D.1986), an appellate court cannot accept counsel's statements as a substitute for record proof, even though the court has no reason to doubt counsel's accuracy.

■ Furthermore, inasmuch as it should have been apparent to J. D.'s lawyer from the trial court's February 17, 1998, docket entry that the court might value J. D.'s "retirement benefit" at $422,-338.14 and the record reflects no effort by J. D.'s lawyer to challenge that value, this court holds J.D. is foreclosed from claim-

**10.** References to Rules are to Missouri Rules of Civil Procedure (1999).

ing there was no evidentiary support for valuing his "retirement benefit" at $422,-338.14.

It must be remembered that although Exhibit 1 was marked as Pat's exhibit, J. D.'s lawyer offered Exhibit 1 in evidence at trial.

In *Kennedy v. Milligan,* 915 S.W.2d 784 (Mo.App. W.D.1996), the appellants argued that the trial court erred in admitting certain rental agreements in evidence. *Id.* at 787. The appellate court held:

"The record clearly shows that appellants themselves offered the rental agreements into evidence. Therefore, their right to appeal this issue has been waived."

*Id.* at [6].

Consistent with *Kennedy,* this court holds that inasmuch as (1) J. D.'s lawyer offered Exhibit 1 in evidence, and (2) the Disputed Entry on Exhibit 1 valued J. D.'s "retirement benefit" at $422,338.14, J.D. cannot claim in this appeal that there was no substantial evidence to support the trial court's valuation of J. D.'s "retirement benefit" at $422,338.14.

■ Furthermore, a party cannot lead a trial court into error and then employ the error as a source of complaint on appeal. *In re Marriage of Collins,* 875 S.W.2d 643, 648[8] (Mo.App. S.D.1994). As J. D.'s lawyer offered Exhibit 1, J.D. cannot now complain that the trial court erred in accepting the $422,338.14 value for J. D.'s "retirement benefit" shown on Exhibit 1.

For the foregoing reasons, this court finds no merit in J. D.'s first point.

■ His second point reads:

"The trial court abused its discretion when it divided the marital property because the court improperly valued the present value of [J. D.'s] retirement thereby resulting in an unjust distribution in violation of section 452.330 RSMo, 1997."

The current version of Rule 84.04 took effect January 1, 1999. It provides, *inter alia:*

**"(d) Points Relied On.**

(1) Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error."

The rule then sets forth a form for a point relied on that satisfies the above requirements.

J. D.'s brief was filed February 26, 1999, after the current version of Rule 84.04 took effect. Consequently, J. D.'s points relied on were required to comply with Rule 84.04(d)(1), quoted above.

J. D.'s second point fails to meet those requirements in that it fails to explain in summary fashion why, in the context of this case, the trial court improperly valued the "present value" of J. D.'s "retirement" or why, in the context of this case, the improper valuation resulted in an unjust division of marital property. The point presents only the bare averment that the valuation was improper and the division unjust. The point leaves this court to ponder why, in the context of this case, that averment is so.

In *J.A.D. v. F.J.D.,* 978 S.W.2d 336, 338–39 (Mo. banc 1998), the Supreme Court of Missouri found a point relied on deficient under the former version of Rule 84.04(d). Consequently, the court limited its review to plain error per Rule 84.13(c). *Id.* at 339. That rule empowers an appellate court, in its discretion, to grant relief from unpreserved plain errors affecting substantial rights if the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

Consistent with *J.A.D.*, this court has reviewed the record in the instant case to determine whether the trial court's division of marital property was, as to J. D., a manifest injustice or miscarriage of justice.

Footnote 6 on page 23 of J. D.'s brief sets forth two lists of property. One, according to J. D., identifies the marital property the trial court awarded Pat. The other, according to J. D., identifies the marital property the trial court awarded him. J.D. maintains that Pat's list totals $247,592.34, whereas his list totals $179,176.58. Consequently, complains J. D., the trial court awarded Pat 58 percent of the marital assets and awarded him only 42 percent.

Upon checking J. D.'s arithmetic, this court discovered that the correct total of Pat's list is only $224,242.34, which means the trial court awarded Pat 55.6 percent of the marital assets and J.D. 44.4 percent.

As reported earlier in this opinion, the trial court's June 2, 1998, docket entry reveals that the court did not intend to divide the marital property equally, as the entry said: "To the extent there is a disproportionate division of assets the Court finds there is more fault on the part of [J. D.]."

Mindful that credibility of the witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part or all of any witness's testimony, *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988), this court finds sufficient evidence in the record to support a finding that J.D. engaged in misconduct exceeding any misconduct by Pat.

Section 452.330.1, RSMo Cum. Supp.1997, requires a trial court to make a fair and equitable division of the marital property in light of the circumstances attending each individual case. *Dardick v. Dardick*, 670 S.W.2d 865, 869 (Mo. banc 1984). The statute does not require an equal division. *Id.* at [4]. A trial court is vested with considerable discretion in dividing marital property, and an appellate court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Id.* at [5].

Reviewing the division of marital property in the instant case for plain error, and cognizant of the trial court's conclusion that J. D.'s conduct warranted a disproportionate division, this court holds no manifest injustice or miscarriage of justice was perpetrated upon J. D.

Judgment affirmed.

PREWITT, P.J., and PARRISH, J., concur.